[No. 25218. Department One. July 23, 1934.]

E. R. YORK *et al., Respondents,* v. INEZ STONE, *Appellant.*[1]

*Harry H. Johnston* and *Robert M. Davis,* for appellant.

*Earl V. Clifford* and *L. L. Thompson,* for respondents.

MAIN, J.—This action was brought to quiet title to lots 4 to 8, inclusive, in block 413, in the Tacoma Land Company's Third Addition to the city of Tacoma. The defendant appeared by answer and cross-complaint, and sought a judgment quieting the title in her, subject to the right of redemption by the plaintiffs. The cause was tried to the court without a jury, and resulted in a judgment dismissing the cross-complaint and quieting the title in the plaintiffs, from which the defendant appeals.

[1]Reported in 34 P. (2d) 911.

The controlling facts are not in material dispute, and may be summarized as follows: Sometime prior to the year 1922, Edward B. Rhodes Post No. 2, Department of Washington, American Legion, was organized. At that time, the War Camp Community Service owned a building in Tacoma, which will be referred to as the Commerce street property. The War Service was ready to cease activities, and the Rhodes Post desired to acquire the property, but had no money.

Henry A. Rhodes, who was the father of Edward B. Rhodes, who was killed while overseas in the World War, in appreciation of the fact that the post had been named after his deceased son, desired to help acquire the property. To this end, he furnished to the post twenty-five thousand dollars in the year 1922, upon open account, no security being taken. The post paid this twenty-five thousand dollars for the property, and contracted to pay an additional five thousand dollars. Two years later, the five thousand dollar payment became due, and, the post not having any money, Mr. Rhodes advanced this sum and the post secured a deed to the property.

At this time, August 13, 1924, a trust agreement was entered into between the post and Henry A. Rhodes, which provided that the post should execute a note, payable to Mr. Rhodes, for the sum of thirty thousand dollars, which should be secured by a mortgage on the property. This agreement created a trust committee consisting of three members, two of whom were named by Mr. Rhodes. The agreement provided that the mortgage should be held and not placed of record until such time as the trust committee, in its judgment, thought it desirable to do so, in order to protect the rights and interests of the mortgagee. The agreement further made the trust committee self-perpetuating.

Sometime during the year 1926, the thought of a

permanent memorial structure developed, and pursuant thereto, the Commerce street property was sold for twenty-three thousand dollars' cash and three unimproved lots. The note and mortgage, with the interest thereon, were wholly unpaid, and, in connection with the sale of the Commerce street property, a second and more extensive trust agreement was entered into September 28, 1926, carrying out the idea of a permanent memorial structure. This second trust agreement is a comprehensive document, and is too long to be set out here in full. The ultimate effect of the document, when taken into consideration with the other evidence in the case, was that the obligations created by the note and mortgage were terminated, and Mr. Rhodes' position changed from that of a lender of money to that of a creator of a trust. This agreement was between the Rhodes Post and Henry A. Rhodes, recites, in detail, the previous dealings of the parties, and declares the intention to devote the cash and proceeds resulting from the sale of the Commerce street property,

". . . to the construction of a memorial building in the city of Tacoma to be known as the Edward B. Rhodes Post Memorial Building, which building shall be constructed and used for the occupancy and benefit of the party of the first part [the Post] during its corporate existence and thereafter for some worthy public or charitable purpose."

The second agreement continued the trust committee under the first, increased its personnel to five, and provided for its perpetuation. No incumbrance was to be placed on the building. In the event that there was a change in the personnel of the trust committee, an affidavit, signed and sworn to by a majority of the other trustees, setting forth the change, should be filed with the county auditor of Pierce county.

February 25, 1929, the Argo Investment Company,

a corporation, conveyed to the "Trust Committee of Edward B. Rhodes Post No. 2, American Legion," the property here in question, the consideration being twelve thousand dollars. Thereafter, a building was erected upon the lots at a cost of approximately thirty thousand dollars. No part of the money that went into the lots or the building came out of the treasury of the Rhodes Post. In addition to what was derived from the sale of the Commerce street property, there was a considerable sum that came in from individual subscriptions.

The second trust agreement provided that the Rhodes Post should have the control and management of the memorial building and the right to collect all revenues therefrom, and it was its duty to pay all taxes and assessments, insurance and operating expenses, and to maintain the same in good condition,

"Provided that in case of emergency the Trust Committee shall have the power by a majority vote to take over the management and control of said building and to collect all income therefrom and apply the same to its expenses and to the payment of all proper charges against said building and all costs of operating and maintaining the same, but the party of the first part shall always be entitled to occupy so much of said building as is reasonably necessary for its activities."

It thus appears that the Rhodes Post, by the express terms of the agreement, shall "always be entitled to occupy" so much of the building as may be reasonably necessary for its activities.

In the fall of 1932, the appellant recovered a judgment against the Rhodes Post in the sum of one thousand dollars, and thereafter levied an execution upon the property and bought the same in at sheriff's sale for the sum of $250. September 2nd of that year, a certificate of sale was issued to her. Subsequent to the recovery of the judgment and prior to the trial of this

action, the trust committee had taken over the management and control of the property, and the post was left with only the right to "occupy" so much of the building as was necessary for its activities.

The first question that we shall consider is whether the deed from the Argo Investment Company is void, as contended by the appellant, by reason of the fact that the members of the committee are not named in the instrument. As appears from what has been stated, the grantee named in the deed was the trust committee of the Edward B. Rhodes Post No. 2, American Legion. The rule is that a deed, in order to pass title, must designate the grantee without uncertainty, but it is not necessary that the grantee be described by name, if otherwise identified or made susceptible of identification by extrinsic evidence.

In *Close v. O'Brien & Co.*, 135 Iowa 305, 112 N. W. 800, it is said:

"It is a well-recognized rule that the grantee in a deed may, under certain conditions, be identified by extrinsic evidence, and, where the grantee may be identified by parol or by other evidence, a conveyance will vest the legal title as completely and as surely as if he were fully identified by the conveyance itself. [Citing authorities.]"

The rule in 8 R. C. L. 558, and 18 C. J. 174, is stated in substantially the same language. The effect of the holdings by this court in the cases of *Chapman v. Tyson*, 39 Wash. 523, 81 Pac. 1066, and *Farmers & Mechanics Bank v. Western Loan & Building Co.*, 103 Wash. 349, 174 Pac. 1, in their result support the same rule. The deed was not a void instrument because there were not named therein as the grantees the members of the trust committee.

The post only having the right of occupancy after the management and control of the property was

taken over by the trust committee, the question arises whether the mere right of occupancy is subject to be levied upon and sold by execution.

Rem. Rev. Stat., § 518, provides that:

"All property, real and personal, of the judgment debtor, not exempted by law, shall be liable to execution."

It will be observed that this statute says "all property" shall be subject to sale upon execution. From this, it would follow that, if the right of occupancy is "property," then it is subject to be levied upon and sold. "Property" is a term of broad significance, embracing everything that has exchangeable value, and every interest or estate which the law regards of sufficient value for judicial recognition. *Samet v. Farmers' & Merchants' National Bank of Baltimore,* 247 Fed. 669; *Wapsie Power & Light Co. v. City of Tipton,* 197 Iowa 996, 193 N. W. 643; *McAlister v. Pritchard,* 287 Mo. 494, 230 S. W. 66. Many other authorities might be cited in support of the rule, but it is so general and well-settled as not to require the multiplication of citations.

In *Fruth v. Board of Affairs of Charleston,* 75 W. Va. 456, 84 S. E. 105, it was held that property included not only the thing possessed, but also the right to use and enjoy it. That the right of the Rhodes Post to occupy the Rhodes Memorial Building was property which comes within the scope of the authorities, is not a matter about which there is doubt. It being property under the statute, it was subject to be levied upon and sold under execution. This right of occupancy, notwithstanding the fact that it was equitable in its nature, could be levied upon and sold. Whatever the authorities may be in other jurisdictions, it has been distinctly held by this court that an equitable interest in either real or personal property is subject to sale on

execution. *Calhoun v. Leary,* 6 Wash. 17, 32 Pac. 1070; *Gordon v. Hillman,* 107 Wash. 490, 182 Pac. 574. In the case last cited, it was said:

"It is contended that Hillman's interest in the note and mortgage, being an equitable one only, is not subject to sale on execution; and many authorities are cited to show that such was the rule at common law. Our statute has, however, removed this question from the realm of the common law. Rem. Code, § 518, provides:

" 'All property, real and personal, of the judgment debtor, not exempt by law, shall be liable to execution.'

"Under this statute, it was held in *Calhoun v. Leary,* 6 Wash. 17, 32 Pac. 1070, that an equitable interest in land will be divested by sale under execution, and we are not now disposed to limit the statute."

Whether the right of occupancy becomes subject to the lien of a judgment, under Rem. Rev. Stat., § 445, prior to the levy of an execution thereon, it is not necessary here to determine. From what has been said, it follows that the Rhodes Post's right of occupancy was subject to levy and sale under execution.

In the appellant's brief, three other questions are presented, which do not appear to us to be of sufficient importance to justify a detailed consideration thereof. One of them is based on the assumption that the Rhodes Post was the creator of the trust, and not Henry A. Rhodes. This question has been disposed of by what has already been said. The other two questions have also been considered, but in neither of them is there substantial merit.

The judgment will be reversed, and the cause remanded to the superior court for further proceedings in conformity with this opinion.

BEALS, C. J., MITCHELL, TOLMAN, and HOLCOMB, JJ., concur.