[No. 34603. Department One. August 7, 1958.]

LEE & EASTES, INC., et al., *Appellants*, v. THE PUBLIC SERVICE COMMISSION et al., *Respondents.*[1]

'Reported in 328 P. (2d) 700.

*George H. Hart, Arthur J. O'Sullivan,* and *Henry T. Ivers,* for appellants.

*The Attorney General* and *David S. Black, Assistant,* for respondent.

FINLEY, J.—This action arose out of an application to sell and transfer a common carrier permit, issued by the public service commission of the state of Washington, pursuant to RCW 81.80.

For many years, H. Morrison, Inc., possessed a common carrier permit, authorizing it to operate intrastate as a carrier of general freight. On July 20, 1955, the state tax commission attached most of the assets of the corporation. On August 4, 1955, Howard J. Martin was appointed temporary receiver, and on September 12, 1955, he qualified as permanent receiver of the corporation. He then set about collecting the freight records and bank account records of H. Morrison, Inc. The receiver found that about $105,000 had passed through the company's bank accounts from January 1, 1955, until the date of the receivership.

On September 18, 1955, the receiver petitioned the superior court for permission to conduct a private sale of the company's common carrier permit and one truck which had not been attached. Permission was granted. The highest bid was submitted by the Chinook Motor Freight Lines in the amount of $18,100. On November 29, 1955, the receiver and the Chinook Motor Freight Lines joined in making application to the public service commission for transfer of the permit.

At the hearing before an examiner in Walla Walla on April 11, 1956, several other permit holders appeared to protest the transfer. But on October 17, 1956, the commission issued an order allowing the sale and transfer. Lee & Eastes, Inc., and other protesting parties obtained a writ of review in the superior court for Thurston county. That court affirmed the order of the commission, and the protestants have appealed.

In this appeal appellants have elected to attack the order of the commission on two points of law: (1) that the commission improperly interpreted RCW 81.80.270—specifically, that it erroneously interpreted the term "property rights" as used in the statute; and (2) that the commission improperly interpreted the term "dormant permit" as it is used in the commission's rules.

RCW 81.80.270 reads as follows:

" . . . No permit issued under the authority of this chapter shall be construed to be irrevocable. Nor shall such permit be subject to transfer or assignment except upon a proper showing that property rights might be affected thereby, and then in the discretion of the commission, . . . "

It is the position of appellants that the term "property rights" was intended to have reference to (1) a carrier's *interstate certificate of public convenience and necessity*—which H. Morrison, Inc., did not possess; and (2) the "good will" or "going business" value of the carrier. Appellants then argue that property rights are not involved in the transfer under consideration, because the transferor pos-

sessed no interstate permit and had no "good will" or "going business" value for the reason that it was insolvent. Appellants further contend that the permit itself should not be considered to be a "property right," since the permit is merely a personal privilege, revocable at any time.

█ RCW 81.80.280[2] requires notice and a hearing before the commission can cancel, suspend, alter or amend any permit; it then authorizes such changes only on the basis of certain violations. Clearly the permits are not subject to the arbitrary whim or caprice of the commission, once they have been issued. In this respect, a permit, once acquired and exercised, becomes a vested right, subject to being divested for cause. See *Taylor-Edwards Warehouse & Transfer Co. v. Department of Public Service* (1945), 22 Wn. (2d) 565, 157 P. (2d) 309.

█ "Property is a word of very broad meaning and when used without qualification may reasonably be construed to include obligations, rights and other intangibles as well as physical things." *Investment & Securities Co. v. Robbins* (1943, E. D. Wash., N. D.), 49 F. Supp. 620. And property ". . . is a term of broad significance, embracing everything that has exchangeable value, and every interest or estate which the law regards of sufficient value for judicial recognition." *York v. Stone* (1934), 178 Wash. 280, 34 P. (2d) 911; *Washington Fruit & Produce Co. v. Yakima* (1940), 3 Wn. (2d) 152, 100 P. (2d) 8, 128 A. L. R. 159. "The right to operate a lawful business is a property right." *Sandona v. Cle Elum* (1951), 37 Wn. (2d) 831, 226 P. (2d) 889.

---

[2] 81.80.280 "Cancellation of permits. Permits may be canceled, suspended, altered, or amended by the commission after notice and hearing upon complaint by any interested party, or upon its own motion, when the permittee or his or its agent has repeatedly violated this chapter, the rules and regulations of the commission or the motor laws of this state or of the United States, or the permittee has made unlawful rebates or has not conducted his operation in accordance with the permit granted him. Any person may at the instance of the commission be enjoined from any violation of the provisions of this chapter, or any order, rule, or regulation made by the commission pursuant to the terms hereof. If such suit is instituted by the commission no bond shall be required as a condition to the issuance of the injunction."

■ While a carrier has no inherent right to move freight over the highways for compensation (see *Taylor-Edwards Warehouse & Transfer Co. v. Department of Public Service, supra*), once a permit has been obtained, its operations become a lawful business. It is apparent from the price offered for the permit involved herein that it has "sufficient value for judicial recognition." *York v. Stone, supra.* We do not believe the commission erred in finding that property rights were involved in the permit transfer involved in this case. See *Allied Van Lines v. Idaho Public Utilities Comm.* (1957), 79 Ida. 220, 312 P. (2d) 1050.

Appellants' second contention concerns the proper interpretation of the term "dormant permit" as used in Rule 21(h) of the commission's rules governing motor freight carriers operating under permit. The rule provides that, unless public need for service can be shown, only permits in active and regular use will be transferred. (Respondents have stipulated that their application for transfer is not based on a showing of public need for service.) The rules specify that usually only the business of the preceding twelve months will be considered in determining whether the permit is dormant; but they also state that consideration will be given to changing conditions or special circumstances. It is apparent that the commission's rules have given no one inflexible meaning to the term "dormant permit."

■■ In interpreting one of the commission's own rules, we have no right to substitute our judgment for that of the commission, unless " . . . they have displayed a disregard of material rights of the parties to a controversy." *Floe v. Cedergreen Frozen Pack Corp.* (1951), 37 Wn. (2d) 886, 226 P. (2d) 871. No such disregard is evident in the record of the case at bar.

The judgment of the superior court should be affirmed. It is so ordered.

HILL, C. J., MALLERY, OTT, and HUNTER, JJ., concur.

December 9, 1958. Petition for rehearing denied.