The **MUTUAL LIFE INSURANCE COMPANY OF NEW YORK**, Defendant, Appellant,

v.

**UNITED STATES of America**, Plaintiff, Appellee.

No. 19190.

United States Court of Appeals Ninth Circuit.

March 3, 1965.

Gerhard A. Munch, Michael L. B. Kaplan, New York City, Morse & Graves, Las Vegas, Nev., for appellant.

Louis F. Oberdorfer, Asst. Atty. Gen., Lee A. Jackson, Joseph Kovner, Alec A. Pandaleon, Attys., Dept. of Justice, Washington, D. C., John W. Bonner, U. S. Atty., Las Vegas, Nev., for appellee.

Before HAMLIN and MERRILL, Circuit Judges, and BASTIAN, Circuit Judge, Sitting by Designation.

MERRILL, Circuit Judge:

This case presents for our consideration problems resulting from the levy by a District Director of Internal Revenue upon a life insurance policy of a delinquent taxpayer, with a demand upon the insurer for payment of the policy's cash surrender value. The United States has brought this action for foreclosure of tax lien [1] against the taxpayer, Albert Salerno, a resident of Las Vegas, Nevada, and against appellant which had, in 1951, issued a policy of insurance upon Salerno's life.

Notice of Tax Lien in favor of the Government against all of taxpayer's property was filed with appellant June 19, 1958. Notice of Levy and Demand was served upon appellant and demand was made for payment of the policy's cash surrender value on February 11, 1960.[2] On that date the cash surrender

---

1. Pursuant to 26 U.S.C. § 7403 (1958) which provides, *inter alia*, for an action in the District Court "to enforce the lien of the United States under this title with respect to such tax or liability or to subject any property, of whatever nature, of the delinquent, or of which he has any right, title, or interest, to the payment of such tax or liability."

2. Section 6321, Int.Rev.Code of 1954, 26 U.S.C. § 6321 (1958), provides that the tax lien shall attach "upon all property

and rights to property * * * belonging to [the taxpayer]." Section 6331(a), 26 U.S.C. § 6331 (1958), authorizes collection of the tax due "by levy upon all property and rights to property * * * belonging to [the taxpayer] or on which there is a lien * * *." Section 6332 (a), 26 U.S.C. § 6332 (1958), provides that "[a]ny person in possession of (or obligated with respect to) property or rights to property subject to levy upon which a levy has been made shall, upon demand * * * surrender such prop-

value of the policy was $660.96. In the fall of 1960, the premium upon the policy falling due and remaining unpaid by or on behalf of Salerno, appellant, pursuant to the terms of the policy's provision for "automatic premium loans," resorted to a "loan" against the policy's cash value for payment of the premium. The policy's surrender value was accordingly reduced to $494.59.

This action was brought in May, 1961, in the District Court for the District of Nevada for foreclosure of the tax lien and, as to appellant, to recover the penalty provided by § 6332(b) of the Internal Revenue Code of 1954, 26 U.S.C. § 6332(b) (1958),[3] for failure to surrender Salerno's property upon Notice of Levy and Demand. Taxpayer suffered a default judgment.

The District Court, in decreeing foreclosure, found the value of Salerno's property subject to foreclosure to be $494.59. It found that the value of Salerno's property in the possession of appellant at the time of Notice of Levy and Demand to be $660.96, and rendered judgment against appellant in this amount (but not to be cumulative with the lien recovery), together with interest at the rate of 6 per cent per annum from February 11, 1960. The opinion of the District Court appears, *sub nom* United States v. Salerno, in 222 F.Supp. 664 (D.C.Nev.1963).

■ Before the District Court the issue presented was whether in an unmatured policy—one where the insured is still alive—the right to the cash surrender value constitutes property to which a lien can attach and which a levy can reach. Relying upon United States v. Bess, 357 U.S. 51, 78 S.Ct. 1054, 2 L. Ed.2d 1135 (1958), the District Court ruled that it did. In so holding it rejected appellant's contentions that Bess was distinguishable since it dealt with a matured policy; that in an unmatured policy no lienable right to the cash surrender value exists in the insured until he has elected to demand it and has surrendered the policy. Appellant has here renewed its contentions in these respects. We agree with the District Court that they are without merit.[4]

Upon this appeal the principal dispute is over the liability of appellant in excess of $494.59, which was the value of the policy at the time of foreclosure. The principal issue is raised by appellant's contention that even though the cash surrender value constituted property to which a tax lien had attached, still appellant's duty to pay over such value did not arise upon Notice of Levy and Demand; that it was necessary to resort to foreclosure in order to establish that duty. This precise issue and the considerations bearing upon it apparently were not presented to the District Court and were not dealt with in its opinion. However, they have since been considered by two courts of appeal upon whose opinions appellant now relies. Equitable Life Assur. Soc'y of United States v. United States, 331 F.2d 29 (1 Cir. 1964); United States v. Sullivan, 333 F.2d 100 (3 Cir. 1964).

In those cases it was held that while the right of the insured in an unmatured policy to demand the cash surrender value

erty or rights (or discharge such obligation) to the Secretary * * *."

3. Section 6332(b), 26 U.S.C. § 6332(b) (1958):
"Any person who fails or refuses to surrender as required by subsection (a) any property or rights to property, subject to levy, upon demand by the Secretary or his delegate, shall be liable in his own person and estate to the United States in a sum equal to the value of the property or rights not so surrendered, but not exceeding the amount of the tax-

es for the collection of which such levy has been made, together with costs and interest on such sum at the rate of 6 percent per annum from the date of such levy."

4. Appellant contends in the alternative that such right of the insured, if it did constitute lienable property, was not possessed by the insurer and could only be reached by levy upon the insured. This contention we do not reach since the levy here was ineffective for other reasons. See footnote 5, infra.

constitutes property to which a lien attaches (in Bess the lien was held to attach to this right while the policy was unmatured), it does not constitute a present debt owing by the insurer and therefore cannot be reached by summary ex parte action of the United States in making levy and demand for payment upon the insurer. Consequently it was held that levy and demand upon the insurer did not, without further proceedings, give rise to an obligation on the part of the insurance company forthwith to cancel the policy and make payment to the United States of the cash surrender value.

■ We agree that a contract the rights of which may, at a party's option, be converted into cash is not the equivalent of cash nor of a debt owing by the other party.[5] As it is made clear in both Equitable Life and Sullivan, those rights may well have a realizable value (at least to the insured or his beneficiaries) in excess of the surrender or conversion value. Ex parte destruction of the contract rights in order to realize their conversion value may under some circumstances be likened to an ex parte wrecking of seized tangible property in order to secure its junk value. Notice of Levy and Demand for payment, even if reaching rights of taxpayer as property in the hands of appellant, does not extinguish rights nor convert them to cash. No duty thereby arose in the insurer to terminate the contract and pay over its cash surrender value.

■ Accordingly we conclude that no penalty may be assessed against appellant for failure to pay over the cash surrender value on demand.

■ Appellant also contends that the beneficiaries of the policy were possessed of such an interest as to be indispensable parties. We do not agree. They were not the owners of the policy, nor were they possessed of any vested rights in it. Their status as beneficiaries was at the sufferance of the insured.[6]

It is ordered that judgment be modified by excluding therefrom any judgment for penalty pursuant to 26 U.S.C. § 6332(b) (1958). As so modified judgment is affirmed.

---

5. The Government has not treated these rights as property other than a debt. It has made no effort to reduce the "property" (upon which it has levied) to money by sale but has assumed that the contract rights were the equivalent of cash, the payment of which could summarily be demanded. We are not, then, faced with the question (which both Sullivan and Equitable Life seem to have answered in the negative) whether there was any property *at all* belonging to the insured in the possession of the insurer which could be reached by levy and realized upon by sale. We decide, and need decide, only that such property, if it did exist, did not constitute a present debt.

6. " * * * if an action is brought against the insured as the delinquent taxpayer, the beneficiary need not be joined as a defendant if under the contract and state law he has no vested interest in the insurance but a mere expectancy. Since the insured in such [a] case can defeat the beneficiary's expectancy by his own voluntary act, the fact that he may be required to do so under compulsion of a court decree cannot increase the beneficiary's interest." Pyle, Liability of Life Insurance and Annuities for Unpaid Income Taxes of Living Insureds, Annuitants, and Beneficiaries, 9 Tax L.Rev. 205, 226 (1954).

Appellant suggests that the insured's wife might have some vested interest as a citizen of a community property state (Nevada), although below it apparently argued that New York law applied. In any case, the District Court held that no rights of the beneficiaries were involved and the appellant has not shown that holding to be clearly erroneous.