UNITED STATES of America,
Plaintiff–Appellant,

v.

Stephen C. HEMMEN, Defendant–
Appellee.

No. 93–35643.

United States Court of Appeals,
Ninth Circuit.

Submitted, Aug. 5, 1994 *.

Decided April 7, 1995.

* The panel unanimously finds this case suitable for decision without oral argument. Fed.R.App.P. 34(a); Ninth Circuit Rule 34–4.

Gary R. Allen, Robert L. Baker and William S. Easterbrook, Tax Div., U.S. Dept. of Justice, Washington, DC, for plaintiff-appellant.

Stephen C. Hemmen, pro se, Tacoma, WA, for defendant-appellee.

Before: ALARCON, BEEZER and KLEINFELD, Circuit Judges.

BEEZER, Circuit Judge:

The United States, acting through the Internal Revenue Service ("Service"), appeals the entry of judgment for Stephen Hemmen, bankruptcy trustee for Flavor Fresh Meals, Inc. ("Flavor Fresh"), in its action seeking $13,535.91 and interest for Hemmen's failure to honor its levy with respect to the allowed administrative expense claims of the debtor's president, Falah Tuba Al–Hadid ("Al–Hadid" or "taxpayer"), pursuant to 26 U.S.C. § 6332(c)(1). The Service contends that the district court erred as a matter of law in concluding that Al–Hadid's claims were "not a property right that was in Hemmen's possession or that he was obligated to pay" at the time the notice of levy was served. The district court had jurisdiction pursuant to 28 U.S.C. §§ 1340 and 1345. We have jurisdiction pursuant to 28 U.S.C. § 1291. We reverse.

## I

On June 23, 1983, the Service assessed a $70,132.89 civil tax penalty against Al–Hadid for failure to remit the income and social security taxes withheld from Flavor Fresh employees for the quarter ending on September 30, 1982. At that time, Flavor Fresh was a Chapter 11 debtor. On May 30, 1984, the bankruptcy court entered an order allowing Al–Hadid's administrative expense claim in the amount of $18,000 for aiding in the preservation of the estate as debtor-in-possession. On September 5, 1984, the case was converted to a Chapter 7 liquidation, and Hemmen was appointed trustee. The bankruptcy court entered a second order on October 16, 1984, allowing an additional administrative expense claim in the amount of $12,000. The court's order indicated that no payment would be made "except upon further order of the court."

On December 17, 1985, Revenue agents served a notice of levy upon Hemmen pursuant to 26 U.S.C. § 6332(a), demanding that he surrender all property or rights to property in his possession necessary to pay the tax liability, which by that time included statutory additions. As of that date, the estate had assets but had not been liquidated. Approximately 18 months later, on May 7, 1987, Hemmen, having during the interim liquidated the estate, filed his final report, indicating that he had $73,946.31 available for payment of administrative expense claims. The Service does not admit but does not contest that it received a notice of intent to distribute funds to Al–Hadid in the amount of $13,535.91 and that it failed to file an objection to this proposed distribution. Soon thereafter, the bankruptcy court ordered Hemmen to disburse the funds. On June 3, 1987, he paid $13,535.91 in satisfaction of Al–Hadid's claims. The court discharged Hemmen from his duties and closed the estate on August 25, 1987.

On September 16, 1987, Revenue agents served a Form 668–C Final Demand on Hemmen referencing the December 1985 notice of levy. Hemmen responded one week later, pointing out that no funds were due Al–Hadid at the time the notice of levy was served and that the Service was notified of the proposed distribution in May 1987 but failed to object.

On June 24, 1992, the Service brought this action in the district court, contending that Hemmen failed to honor the December 1985 notice of levy and was, thus, personally liable under § 6332(c)(1) of the Internal Revenue Code. At the ensuing bench trial, Hemmen argued that he was not in possession of Al–Hadid's property at the time he received the notice of levy. He also contended that the levy violated the automatic stay provision, 11 U.S.C. § 362(a), that he, as trustee, was entitled to quasi-judicial immunity and that the action was barred by laches or by other equitable principles. On May 5, 1993, the district court orally dismissed the action and entered judgment for Hemmen, concluding that he was not in possession of, or had no obligation with respect to, the taxpayer's property or rights to property at the time of levy. The court expressly rejected Hemmen's defense of laches but otherwise did not consider his alternative defenses. The Service timely appeals.

## II

■ We review *de novo* the legal question whether the Service's levy with respect to a taxpayer's allowed administrative expense claim must be honored by a bankruptcy trustee. See *In re American Bicycle Ass'n,* 895 F.2d 1277, 1278–79 (9th Cir.1990).

The Service contends that the district court's conclusion rests on the faulty premise that Al–Hadid's allowed administrative expense claim was not "property or rights to property subject to levy" within the meaning of §§ 6331(a) and 6332(a). Arguing that an allowed administrative expense claim is properly characterized as "property" or as a "right to property" under Washington law, the Service contends that Hemmen, as bankruptcy trustee, was personally liable under § 6332(c)(1) for his failure to honor the December 17, 1985 notice of levy.

■ Title 26 U.S.C. § 6321 gives the United States a lien for unpaid taxes against "all property and rights to property, whether real or personal, belonging ... [to a delinquent taxpayer]." The tax lien has a very

broad scope. *See, e.g., United States v. National Bank of Commerce,* 472 U.S. 713, 719–720, 105 S.Ct. 2919, 2923–24, 86 L.Ed.2d 565 (1985) (concluding that the tax lien reaches "every interest in property that a taxpayer may have"); *In re Kimura,* 969 F.2d 806, 810 (9th Cir.1992) (same). We look to state law to determine whether a taxpayer's interest constitutes "property" and to federal law to determine the resulting consequences. *United States v. Bess,* 357 U.S. 51, 55, 78 S.Ct. 1054, 1057, 2 L.Ed.2d 1135 (1958). Tax liens arise upon assessment and continue in effect until the liability is paid or the statute of limitations expires. *Glass City Bank v. United States,* 326 U.S. 265, 267, 66 S.Ct. 108, 110, 90 L.Ed. 56 (1945); *see* 26 U.S.C. § 6502(a) (providing that an enforcement action must begin within six years of assessment).

■ The Code provides for two methods by which the Service can enforce its lien. It can bring a foreclosure action pursuant to 26 U.S.C. § 7403 or it can, as it did here, simply levy on the property pursuant to § 6331(a).[1] Unlike a foreclosure action, the levy is essentially a provisional, administrative procedure. *National Bank of Commerce,* 472 U.S. at 722, 105 S.Ct. at 2925. The levy reaches only "property possessed and obligations existing at the time of the levy." 26 U.S.C. § 6331(b). The Service has interpreted this "present obligation" requirement as follows:

> [l]evy may be made by serving a notice of levy on any person in possession of, or obligated with respect to, property or rights to property subject to levy, includ-

ing receivables, bank accounts, evidences of debt, securities, and salaries, wages, commissions, or other compensation.... [A] levy extends only to property possessed and obligations which exist at the time of the levy. *Obligations exist when the liability of the obligator is fixed and determinable although the right to receive payment thereof may be deferred until a later date.*

26 C.F.R. § 301.6331–1(a)(1) (emphasis added). A levy with respect to intangible property is made by service of a notice of levy. *United States v. Donahue Industries, Inc.,* 905 F.2d 1325, 1330 (9th Cir.1990). Service of a notice of levy confers on the United States the right to all property levied upon and creates a custodial relationship so that the property comes into the constructive possession of the government. *American Acceptance Corp. v. Glendora Better Builders,* 550 F.2d 1220, 1222–23 (9th Cir.1977) (citing *Phelps v. United States,* 421 U.S. 330, 334, 95 S.Ct. 1728, 1731, 44 L.Ed.2d 201 (1975)).

■ Title 26 U.S.C. § 6332(a) imposes a duty on third parties to honor the Service's notice of levy.[2] Failure to honor the levy results in personal liability under 26 U.S.C. § 6332(c)(1).[3] Section 6332(c)(2) further provides that the Service may assess an additional penalty against "any person" who "fails or refuses to surrender such property or rights to property without reasonable cause." 26 U.S.C. § 6332(c)(2). We recognize only two defenses available to a party served with a notice of levy: (1) the party did not possess

---

1. § 6331(a) provides, in pertinent part, that:
   if any person liable to pay any tax neglects or refuses to pay the same ... [the Service may] collect such tax ... by levy upon all [nonexempt] property and rights to property belonging to such person or on which there is a lien provided in this chapter for payment of such tax.

2. Section 6332(a) provides, in pertinent part, that:
   any person in possession of (or obligated with respect to) property or rights to property subject to levy upon which levy has been made shall ... surrender such property or rights (or discharge such obligation) ... except such part of the property or rights as is, at the time of such demand, subject to an attachment or execution under any judicial process.

3. Section 6332(c)(1) provides, in pertinent part, that:

   > [a]ny person who fails or refuses to surrender any property or rights to property, subject to levy, upon demand by the Secretary, shall be liable in his own person and estate to the United States in the sum equal to the value of the property or rights not so surrendered, but not exceeding the amount of taxes for the collection of which such levy has been made, together with costs and interest on such sum....

   Current § 6332(e), formerly § 6332(d), provides the third party an absolute defense against any subsequent claim by a "delinquent taxpayer or any other person."

any property or rights to property of the taxpayer and (2) the property was subject to a prior attachment or execution. *Bank of Nevada v. United States,* 251 F.2d 820, 824 (9th Cir.1957), *cert. denied,* 356 U.S. 938, 78 S.Ct. 780, 2 L.Ed.2d 813 (1958)..

## A

■ The Service is correct that Al–Hadid's interest in his allowed administrative expense claims constituted "property" under Washington law. Washington defines "property" very broadly. *See, e.g., Lee & Eastes, Inc. v. Public Serv. Comm'n,* 52 Wash.2d 701, 328 P.2d 700, 702 (1958) (defining the term "property" as "embracing everything that has exchangeable value"). *Accord Little v. United States,* 704 F.2d 1100, 1106 (9th Cir. 1983) (concluding that a right of redemption is "property" under § 6321 when it represents an "economic asset" that has "pecuniary worth," notwithstanding its characterization as a "privilege" under California law). A party who holds an allowed claim against a bankruptcy estate clearly holds something of "exchangeable" value. The fact that an allowed claim can be satisfied only after certain events have transpired, such as the determination that the estate has sufficient assets to satisfy the claim, does not negate the character of the holding as "property" under Washington's broad definition of this term. *Accord Leuschner v. First Western Bank & Trust Co.,* 261 F.2d 705, 708 (9th Cir.1958) (*cited in St. Louis Union Trust Co. v. United States,* 617 F.2d 1293, 1302 (8th Cir.1980)).

## B

That an allowed administrative expense claim constitutes "property" is not, as the Service suggests in its opening brief, dispositive. In its oral decision, the district court expressly conceded that Al–Hadid's claim may be a contingent property right subject to the Service's levy. It concluded, however, that Al–Hadid's interest was "not a property right that was *in the possession of Mr. Hemmen or that he [Hemmen] was obligated to pay at the time of the levy. He had nothing at that time that belonged to the taxpayer.*"

The district court reached this conclusion largely on the reasoning in *United States v. Mitchell,* 349 F.2d 94, 105–06 (5th Cir.1965), in which the Fifth Circuit considered whether a tax levy obligated an insurer to turn over the cash surrender value of its insured's executory life insurance contract. Determining that the levy was noticed prior to the insured's election to take the cash surrender value, the Fifth Circuit concluded that the insurer did not possess any property it could surrender at the time the notice of levy was served. *Id.* Noting that a levy, unlike a lien, does not apply to after-acquired property, the court reasoned that "a new levy would seem necessary to reach the cash surrender value when it is eventually demanded." *Id.*

As the underscored passage and the court's reliance on *Mitchell* indicate, the district court's conclusion was based on the determination that Hemmen did not "possess or was not obligated with respect to" Al–Hadid's property at the time he received the notice of levy. Thus, in addition to determining whether an allowed claim is "property" under Washington law, we must consider whether, as a matter of federal law, the notice of levy obligated Hemmen to surrender funds that became available only after the estate was liquidated and the bankruptcy court approved the proposed distribution. This is essentially a question of *timing* implicating the present obligation requirement in § 6331(b). Under the Service's own interpretation, we must determine whether the liability of the bankruptcy estate to Al–Hadid was "fixed and determinable" at the time the notice of levy was served on Hemmen. 26 C.F.R. § 301.6331–1(a)(1).

### 1

■ It appears that no Circuit court has specifically considered at which point, if ever, a bankruptcy estate becomes an "obligator" whose liability with respect to a creditor's allowed administrative expense claim is "fixed and determinable" within the meaning of 26 C.F.R. § 301.6331–1(a)(1). As a preliminary matter, we cannot agree with the district court that *Mitchell* establishes the appropriate point of departure.[4] In this re-

---

**4.** An even less appropriate point of departure is

*Mutual Life Ins. Co. of New York v. United States,*

spect, we note only that the holding in *Mitchell* has been superceded by passage of § 104 of the Federal Tax Lien Act of 1966, Pub.L. No. 89–719, 80 Stat. 1125, *codified in part* at 26 U.S.C. § 6332(b).[5] Although not controlling on the question before us, Congress' passage of § 104 in the wake of *Mitchell* cautions us not to construe too restrictively the reach and scope of the tax levy. *See United States v. Metropolitan Life*, 874 F.2d 1497, 1499–1500 (11th Cir.1989). The Supreme Court has also more recently rejected a restrictive construction of the reach of the tax levy, albeit in an unrelated context. *See National Bank of Commerce*, 472 U.S. at 729, 105 S.Ct. at 2929 (concluding that a notice of levy obligates banks to surrender a taxpayer's funds held in a joint bank account even absent prior notice to joint holders on the ground that it is a provisional measure designed to promote the prompt collection of taxes).

We are also not persuaded that *Laughlin v. IRS*, 912 F.2d 197, 198–99 (8th Cir.1990), which Hemmen cites as authority for the proposition that he was not obligated to honor the tax levy, provides a ready answer to the question before us. In *Laughlin*, the Eighth Circuit, on similar facts, determined that the trustee must honor the Service's levy with respect to a creditor's claims against two Chapter 13 estates for which plans had been confirmed at the time the notice of levy was served. 912 F.2d at 198–99. In response to the trustee's argument that the enforcement action violated the automatic stay, the court concluded that the levy "no more interfered with the purposes of the automatic stay ... than it would have

had the notice of levy been served upon the bank in which the estate checks were deposited had they been sent to and received by the [taxpayer] in due course." *Id.* at 198.

Hemmen emphasizes that *Laughlin* concerned only funds payable from confirmed Chapter 13 plans and that the Service took the position in that action that "the levy would not be effective against the estate of the third debtor, for which there was not yet a confirmed plan." 912 F.2d at 198. Analogizing the pre-plan Chapter 13 estate to an unliquidated Chapter 7 estate, he argues that *Laughlin* supports the position that the notice of levy was defective because it was premature. Although he does not argue the point directly, he implies that a second levy, noticed after the Chapter 7 estate was liquidated or, perhaps, after the bankruptcy court approved the proposed distribution, was necessary to meet the "present obligation" requirement of § 6331(b).

Although the decision can be construed to give rise to the inference Hemmen draws from it, the holding in *Laughlin* actually supports the Service's position in the present action. Nor are we persuaded that the Eighth Circuit would have agreed with Hemmen's position had this question been before it. In this respect, we note that the court expressly declined to rest its decision on the narrower holding that the Service's levy was valid only because claims against a post-confirmation Chapter 13 estate are vested property rights. *See Laughlin*, 912 F.2d at 198 n. 4. Finally, even accepting Hemmen's analogy between a pre-plan Chapter 13 and an unliquidated Chapter 7 estate, we are not persuaded, for reasons we explore below,

343 F.2d 71, 73 n. 4 (9th Cir.1965), in which we expressly reserved the question addressed in *Mitchell*. In *Mutual Life*, we concluded that the insurer's failure to turn over the cash surrender value of the policy was for reasonable cause because "levy and demand upon an insurer did not, without further proceedings, give rise to an obligation on the part of the insurance company forthwith to cancel the policy and make payments to the United States of the cash surrender value." 343 F.2d at 74. In the instant case, the Service is not seeking a penalty under § 6332(c)(2) for Hemmen's failure to surrender Al–Hadid's property without reasonable cause. It does not urge that he was under a duty to liquidate estate assets in order to honor its levy

at the time he received the notice. As such, that decision is inapposite.

5. Section 6332(b)(1) provides, in pertinent part, that:

> [a] levy on an organization with respect to a life insurance or endowment contract issued by such organization shall, without necessity for the surrender of the contract document, constitute a demand by the Secretary for payment ... and the exercise of the right of the person against whom the tax is assessed to the advance of such amount. Such organization shall pay over such amount 90 days after service of notice of levy.

that a levy is necessarily defective with respect to a creditor's interest in a pre-plan Chapter 13 estate.

### 2

■■■■■ Finding no case law on point, we turn directly to the language of 26 C.F.R. § 301.6331–1(a)(1) to determine whether Hemmen was obligated to honor the Service's levy on the facts before us.[6] We note at the outset that § 301.6331–1(a)(1) defines a "fixed and determinable" liability negatively, by distinguishing a "fixed and determinable" liability from obligations merely involving deferred payment. This means that, to prevail, Hemmen must, at a minimum, establish that the estate's liability to Al–Hadid at the time the notice of levy was served was materially distinguishable from that of an obligor on an ordinary contract with an executory duty to pay for a completed performance by the obligee. We conclude that as a matter of law he cannot do so.

There is no dispute that Al–Hadid fully performed the beneficial acts giving rise to his allowed administrative expense "claims prior to the service of the notice of levy. The provisions in the Bankruptcy Code for the allowance of administrative expense claims and for the administrative expense priority effectively negate the proposition that the services Al–Hadid's rendered to the estate were the beneficial acts of a volunteer, performed without legitimate expectations of compensation. *See* 11 U.S.C. §§ 503, 507. The $13,535.91 payment he ultimately received was tied to the performance he undertook prior to the service of the tax levy. The payment simply cannot, thus, be characterized as after-acquired property. Hemmen is correct that, although allowed, Al–Hadid's administrative expense claim could be reduced to money only after it was determined that sufficient assets existed to satisfy his claims and the bankruptcy court approved the proposed distribution. He is also correct that the trustee retained the power during the interim to move the court to disallow the administrative expense claims. None of

these conditions to payment, however, undermines the proposition that the obligation of the estate to Al–Hadid was "fixed" within the meaning of § 301.6331–1(a)(1) after the underlying performance was completed and the claim was allowed by the court. *Accord United States v. Antonio,* 91–2 U.S. Tax Cas. (CCH) P50, 482, 1991 WL 253021 (D.Haw. 1991) (concluding that an obligation on a contract is "fixed" when performance has occurred); *Tull v. United States,* 848 F.Supp. 1466, 1478–80 (E.D.Cal.1994) (concluding that an obligation is "fixed" upon execution of an auction contract even though right to proceeds of the auction will arise only after the execution of individual sales contracts ·between the auctioneer agent and third party buyers). At best, the factors Hemmen cites establish only that the estate's liability was fixed but that Al–Hadid's interest was still subject to possible defeasance due to factors having no bearing on the underlying performance.

■■■■ Although what sum, if any, would be ultimately paid to Al–Hadid on his allowed claims was uncertain at the time the notice of levy was served, this uncertainty does not defeat the fact that the estate's obligation was "determinable." Unlike a requirement that the extent of an obligation be "determined," the term "determinable" requires only that the sum be capable of precise measurement in the future. *Accord Reiling v. United States,* 77–1 U.S. Tax Cas. (CCH) P9269, 1977 WL 1094 (N.D.Ind.1977) (concluding that an obligation is "determinable" when contractual performance has been completed, despite continuing litigation over the amount due). This determination was in fact readily made at the moment the bankruptcy court approved the proposed distribution.

We conclude that an allowed administrative expense claim against a bankruptcy estate is "property" under Washington law subject to a Federal tax levy and that Hemmen, as trustee, was obligated with respect to a "fixed and determinable" liability at the

---

**6.** As trustee, Hemmen represented the bankruptcy estate. *See* 11 U.S.C. § 323(a). As the estate's representative, he was charged with the duty to reduce to money the property of the

estate. *See* 11 U.S.C. § 363(b). As such, the service of a notice of levy upon him for any obligations owing by the estate was proper.

time the notice of levy was served on him. We are aware that our conclusion imposes an added burden on bankruptcy trustees. *See Laughlin,* 912 F.2d at 199. We are also aware, however, of the additional burden that a contrary conclusion would impose on the Service's ability to expeditiously collect delinquent taxes. The rule Hemmen urges would create a narrow window of opportunity through which the Service can effectively serve notice of levy. We see little benefit to requiring the Service to closely monitor the progress of the administration of every estate against which delinquent taxpayers hold allowed claims. This added burden and delay would defeat the very purpose that the administrative levy was designed to serve. *See National Bank of Commerce,* 472 U.S. at 729, 105 S.Ct. at 2929; *cf. In re American Bicycle Ass'n,* 895 F.2d at 1280–81 (concluding that Anti–Injunction Act precludes a bankruptcy court from enjoining the Service from collecting a penalty assessed against an officer of the debtor corporation). Our conclusion merely requires the trustee to pay funds to the Service rather than to the delinquent taxpayer once the estate is liquidated and the proposed distribution is approved. The trustee is presumably in a position to monitor the progress of the administration of the estate more efficiently.

## III

■ Because we can affirm the district court on any basis fairly supported by the record, *United States v. Washington,* 969 F.2d 752, 755 (9th Cir.1992), we next consider the alternative defenses Hemmen raised before the district court.

### A

■ Hemmen contends that the Service's notice of levy violated the automatic stay provision at 11 U.S.C. § 362.

■ As noted above, this argument was rejected by the Eighth Circuit in *Laughlin,* on the reasoning that the entities the automatic stay is designed to protect were left unaffected by the levy. 912 F.2d at 198; *cf. B & G Ltd. v. Levin,* 462 F.2d 436, 438 (doctrine of *custodia legis* does not bar Ser-

vice's levy against funds payable to fourth party) (5th Cir.1972); *In re Quakertown Shopping Center, Inc.,* 366 F.2d 95, 98 (3d Cir.1966) (same). We agree. The automatic stay is designed to protect the debtor, the assets of the estate and the interests of other creditors in those assets. *Laughlin,* 912 F.2d at 198. Any perceived effect of a tax levy on the debtor, the estate's assets or the interests of other creditors is purely chimerical. The only interests reached by the levy belonged to a non-debtor, Al–Hadid. The levy created a custodial relationship, bringing Al–Hadid's interest into the constructive possession of the United States. *See Glendora Better Builders,* 550 F.2d at 1222–23. The actual operation of the levy is, thus, practically indistinguishable from a creditor's voluntary transfer of a claim. *See* Bankruptcy Rule 3001(e).

### B

■ Hemmen also argues that he is shielded from personal liability under the doctrine of quasi-judicial immunity because his final distribution was made pursuant to court order.

■ As a general matter, bankruptcy trustees enjoy broad immunity from suit when acting within the scope of their authority and pursuant to court order. *Bennett v. Williams,* 892 F.2d 822, 823 (9th Cir.1989). Trustees are not immune, however, for intentional or negligent violation of duties imposed by law. *Id.* We have determined that Hemmen was under a legal duty to honor the Service's levy. Although the issue confronting him was in some respects novel, Hemmen was on notice that the Service had levied on Al–Hadid's property and failed to honor the levy in violation of § 6332(c)(1). Hemmen's failure to honor the levy, moreover, did not arise out of his duty to protect the assets of the estate. We also find noteworthy that Hemmen did not argue before the district court, or in his brief before this court, that he sought instruction or guidance or even brought the precise legal question to the attention of the bankruptcy court. He thus cannot characterize his failure to honor the levy as resulting from obedience to a court order. Under these circumstances, quasi-

judicial immunity does not shield him from liability.

## C

Hemmen's remaining equitable defenses revolve around a common nucleus of fact, involving the Service's failure to timely respond to his notice of proposed disposition and to initiate this action. He invokes laches. He also argues that the Service's failure to object to the notice of proposed distribution misled him into believing that the Service considered its levy to be defective and that it, consequently, would not hold him personally liable for failing to honor the levy. These facts can be characterized to state a defense of equitable estoppel.

As a preliminary matter, the district court properly rejected Hemmen's invocation of laches. *See United States v. First Nat'l Bank of Circle,* 652 F.2d 882, 890 (9th Cir. 1981) (laches is not a defense to the enforcement of tax claims by the United States).

The traditional elements of equitable estoppel are that: (1) the party to be estopped knows the facts, (2) he or she intends that his or her conduct will be acted on or must so act that the party invoking estoppel has a right to believe it is so intended, (3) the party invoking estoppel must be ignorant of the true facts, and (4) he or she must detrimentally rely on the former's conduct. *Watkins v. United States Army,* 875 F.2d 699, 709 (9th Cir.1989) (en banc), *cert. denied,* 498 U.S. 957, 111 S.Ct. 384, 112 L.Ed.2d 395 (1990).[7] When a party seeks to invoke equitable estoppel against the government, we additionally require a showing that the agency engaged in "affirmative conduct going beyond mere negligence" and that "the public's interest will not suffer undue damage" as a result of the application of this doctrine. *Id.* at 707.

Hemmen presents a strong case for the application of equitable estoppel under its traditional elements. Although it is unclear what the Service actually knew, it could infer that Hemmen would act in a manner contrary to its interests when after a nearly eighteen month-long period of silence following its notice of levy it received the notice of a proposed disposition listing Al–Hadid as the payee of his allowed claims. Despite this fact, the Service failed to timely object or to otherwise alert Hemmen to the fact that the levy had not been released with respect to Al–Hadid's claims. It then served its final demand several weeks after the proposed distribution was effected and the estate was closed. Unaware of the Service's position, Hemmen, perhaps reasonably in light of the dicta from the Eighth Circuit's decision in *Laughlin* discussed above, paid the funds to Al–Hadid in reliance on the Service's silence.

Although strong, the facts do not meet the high threshold we have established for applying equitable estoppel against the government. Even if the public's interest would not "suffer undue damage" because of the singular facts presented here, the Service's failure to object to the proposed distribution, or to otherwise alert Hemmen to the consequences of his proposed course of action, raises questions only as to what the Service failed to do; the Service's conduct cannot be characterized as "affirmative conduct going beyond mere negligence." *Watkins,* 875 F.2d at 707. Hemmen's estoppel defense necessarily fails.

## IV

The Service's December 17, 1985 levy put Hemmen on notice that he would disburse funds to the taxpayer at his peril. His failure to honor the notice of levy renders him liable under 26 U.S.C. § 6332(c)(1). We REVERSE the district court's contrary conclusion.

KLEINFELD, Circuit Judge, dissenting:

I respectfully dissent. I would affirm the district court's judgment in favor of the trustee, Mr. Hemmen.

Mr. Al–Hadid, not Mr. Hemmen, owed the taxes. Mr. Hemmen can be obligated only if, when the IRS levied upon him in 1985, he then owed Mr. Al–Hadid a fixed and deter-

---

7. Although we have never applied this doctrine to bar the Service from enforcing a levy, we have left open this possibility. *See United States v.* *Overman,* 424 F.2d 1142, 1147–48 (9th Cir.1970); *accord United States v. One 1973 Buick Auto.,* 560 F.2d 897, 899 (8th Cir.1977).

minable sum of money. When the IRS levied on Hemmen in 1985, Hemmen could not have paid Al–Hadid any money, and could not have paid the IRS any money. The two court orders purported to award $30,000 in administrative expenses to Al–Hadid, but did not allow payment of any money to Al–Hadid except upon subsequent order, and did not establish that $30,000 would be the amount payable. In fact, Al–Hadid never became entitled to the $30,000 "allowed." Instead, in 1987 the distribution to Al–Hadid was $13,535.91.

The actual notice of levy issued in 1985 ordered Hemmen to pay "money ... now in your possession and belonging to this taxpayer [Al–Hadid] (or for which you are obligated) and all money or other obligations owing from you to this taxpayer," up to $93,576.93. If the majority analysis is correct, then the implication must be that when Hemmen received this notice of levy, he should have sent a check to the IRS for $30,000, the amount then subject to Al–Hadid's administrative expense award. That would plainly have been mistaken. It would have been almost three times too much money, and could not have properly been disbursed at that time.

The IRS, like any other creditor, had either to seek dissolution of the automatic stay in bankruptcy and some special relief, or else await distribution when all creditors' entitlements became final. See 1A Collier on Bankruptcy ¶ 12.06[1] (15th ed. 1993) ("The automatic stay prohibits the IRS and other creditors from taking actions which are detrimental to the bankruptcy estate or which result in a creditor changing the nature or priority of a claim after the bankruptcy petition is filed.... [T]he IRS cannot take any action to obtain possession of property of the estate or to obtain control over property of the estate"); see also id. at ¶ 12.06[4] ("The automatic stay is extremely broad in scope, and applies to almost any type of collection action against the debtor or property of the bankruptcy estate. Thus the functions of the Collection Division of the IRS are those which are the most severely curtailed by the filing of a case under title 11.").

The IRS could not properly levy against the bankruptcy estate in 1985, because of the automatic stay. Congress prohibited just such an act as the levy which was made:

(a) Except as provided in subsection (b) of this section, a petition filed ... operates as a stay, applicable to all entities, of—

(3) any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate

11 U.S.C. § 362(a); 11 U.S.C. § 101(15) ("'entity' includes person, estate, trust, governmental unit, and United States Trustee"). The reader will notice that exceptions to the automatic stay are listed in subsection (b). The list includes an exception for "issuance to the debtor by a governmental unit of a notice of tax deficiency." 11 U.S.C. § 362(b)(9). There is no exception for notices of levy. The tax regulations expressly prohibit a levy upon assets in the custody of the court in a bankruptcy proceeding, "except where the proceeding has progressed to such a point that the levy would not interfere with the work of the court or where the court grants permission to levy." 26 C.F.R. § 301.6331–1(a)(3); see also 1A Collier on Bankruptcy ¶ 12.06[4] ("The IRS is not permitted to mail postpetition Notices of Intent to Levy any assets of the debtor...."). I see no way that the IRS could in 1985, consistently with the automatic stay statute, take money from Hemmen on its levy which might arguably be due to Al–Hadid, even if the amount to be taken could have been ascertained in 1985.

Even if it had been lawful for the IRS to levy on an account due to Mr. Al–Hadid in 1985, no such account existed in Mr. Hemmen's hands. The regulation provides that a third party obligation has to be "fixed and determinable" to be subject to levy, and a levy has no effect on money subsequently coming into the third party's possession.

Levy may be made by serving a notice of levy on any person in possession of, or obligated with respect to, property or rights to property subject to levy, including receivables, bank accounts, evidences of debt, securities, and salaries, wages, commissions, or other compensation. Except as provided in § 301.6631–2(c) with regard to a levy on salary or wages, *a levy*

*extends only to property possessed and obligations which exist at the time of the levy. Obligations exist when the liability of the obligor is fixed and determinable although the right to receive payment thereof may be deferred until a later date. For example, if on the first day of the month a delinquent taxpayer sold personal property subject to an agreement that the buyer remit the purchase price on the last day of the month, a levy made on the buyer on the tenth day of the month would reach the amount due on the sale, although the buyer need not satisfy the levy by paying over the amount to the district director until the last day of the month. Similarly, a levy only reaches property in the possession of the person levied upon at the time the levy is made. For example, a levy made on a bank with respect to an account of a delinquent taxpayer is satisfied if the bank surrenders the amount of the taxpayer's balance at the time the levy is made. The levy has no effect upon any subsequent deposit made by the taxpayer. Subsequent deposits may be reached only by a subsequent levy on the bank.*

26 C.F.R. § 301.6331–1(a)(1) (emphasis added). In 1985, when the IRS levied, the bankruptcy trustee's obligation to Mr. Al–Hadid was not yet "fixed" and "determinable." It was capped at $30,000, but not fixed at that or any other amount, and no one could then determine how much money Mr. Al–Hadid would get. The amount became fixed in 1987, when it was determined to be a much lower amount, $13,535.91.

The two examples provided in the regulation illustrate what the words "fixed and determinable" mean. Mr. Al–Hadid's $13,535.91 is not like the amount to become payable at the end of the month from the real estate buyer. That amount is fixed and determined, even though not yet payable. The $13,535.91 is more closely analogous to the subsequently made bank deposit. The earlier levy does not make the bank liable to the IRS for the later deposit. The bank does not need to keep track of deposits into the taxpayer's account as they come in from the taxpayer or third parties and remit them to the IRS. Instead, a levy has no effect on a subsequent deposits. Mr. Hemmen is analogous to the bank, a third party which from time to time owes money to the taxpayer. True, he would foreseeably owe something as of 1985 when the levy was made, but the obligation was not fixed, and he could not determine how much it would be until 1987, long after the levy.

The IRS should have acted to get its money when the trustee sent it the notice of hearing in 1987.