122 F.3d 1071
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Michael e. GAUDIN, Sherri M. WILLIAMS and Hallmark
Properties, Inc., Plaintiffs-Appellants,
v.
WESTERN MORTGAGE LOAN CORPORATION, Defendant-Appellee.
 No. 96-35811.
 United States Court of Appeals, Ninth Circuit.
 Aug. 19, 1997.
 
 Before: REAVLEY,** O'SCANNLAIN and FERNANDEZ, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Michael Gaudin appeals a summary judgment entered against him in his suit against Western Mortgage Loan Corporation (Western). While the factual background of the suit is complex and some immaterial factual matters are in dispute, we conclude that Western was entitled to summary judgment.
 
 
 3
 Gaudin claims that Western breached a contract to provide loans to home buyers that he brought to Western. The loans were to be federally insured under the 203-B loan program offered by the Federal Housing Administration (FHA). This program covers non-owner-occupied housing and is intended to encourage investors to purchase housing for low-income rental purposes. The district court held that the contract, if any, was unenforceable under Montana law because it facilitated an illegal scheme. The court concluded that Gaudin engaged in the practice of locating "strawbuyers" who paid none of the closing costs for the 203-B loans and would reconvey the property to Gaudin in exchange for $1000. Gaudin, the seller of the properties, would thereby reacquire the properties, in the name of one of his companies, and assume the FHA-insured loan. The court concluded that the transactions were illegal under 18 U.S.C. § 1001 because they were obtained by making false statements to the federal government regarding Gaudin's refund of equity down payments to his purchasers.
 
 
 4
 Gaudin argues that Western was well aware of the nature of the transactions and that the district court erred in ruling the transactions illegal as a matter of law. As in the district court, Western argues on appeal that, in addition to its illegality defense, the contract claim should fail because once the FHA refused to insure any more loan applications brought to Western by Gaudin, the contract became impossible to perform. Without reaching the issue of illegality, we agree with this alternative ground for summary judgment on the contract claim. We may affirm the summary judgment on any ground fairly supported by the record. Reynolds v. County of San Diego, 84 F.3d 1162, 1166 (9th Cir.1996); United States v. Hemmen, 51 F.3d 883, 891 (9th Cir.1995).
 
 
 5
 Gaudin's contract claim is that Western promised to make loans under the 203-B loan program to credit-worthy purchasers Gaudin brought to Western. The amended complaint alleges that Gaudin, his spouse and company "elected to do their financing through [Western] ... because [Western] was the only lender known to Plaintiffs which was willing to finance properties using the FHA 203B investor loan program.... In 1986 Plaintiffs and Defendant entered into a business relationship whereby Defendant provided financing to credit-worthy buyers of Plaintiffs' properties and Plaintiffs referred their buyers to Defendant." Gaudin has consistently described the alleged contract in these terms throughout the record. In his appellate brief he defines the contract as one where Western "agreed to provide FHA 203-B loans to Plaintiffs' credit-qualified purchasers anywhere in Montana." During the oral argument of this appeal, his counsel stated that the contractual promise "was to make FHA § 203-B nonowner-occupied loans to qualified purchasers of property that Mr. Gaudin had acquired, refurbished, brought up to FHA standards, and the buyers were desirous of acquiring."
 
 
 6
 Gaudin conceded at oral argument that FHA approval was required for 203-B loans. While Western participated in the FHA's "direct endorser" program, see United States v. Gaudin, 997 F.2d 1267, 1269 (9th Cir.1993), affirmed on rehearing en banc, 28 F.3d 943 (9th Cir.1994), affirmed, 115 S.Ct. 2310 (1995); 24 C.F.R. §§ 203.3, 203.5, there is no dispute that the FHA could refuse to insure loans originated by Gaudin. The FHA can refuse to issue insurance on any mortgage submitted by a direct endorser if it determines that "there is any information indicating that any certification or required document is false, misleading, or constitutes fraud or misrepresentation on the part of any party, or that the mortgage fails to meet a statutory or regulatory requirement." Id. § 203.255(c). The FHA can also revoke a lender's status as a direct endorser. Id. § 203.3(d)(2); 203.255(e).
 
 
 7
 Gaudin complains that his business and reputation were ruined when Western abruptly denied 18 pending loan applications in April of 1987. Undisputed summary judgment evidence establishes the following. In September of 1986 the FHA issued a "Program Integrity Bulletin" concerning strawbuyer schemes. The bulletin warns loan applicants that they must not "accept down payment funds from a real estate agent or broker, seller, mortgagee, or other party involved with the sale of the property." It further states that loan applicants must not "act as a strawbuyer," where the applicant "is approached by someone who offers you money to 'act' as a homebuyer and apply for a loan on a certain property. This individual or another then obtains title to the property after closing." The bulletin states that such a scheme is illegal.
 
 
 8
 In November of 1986 Gaudin and Western met concerning a property subject to a 203-B loan that had been sold and then repurchased by Gaudin. Western was concerned that this loan ran afoul of the FHA's strawbuyer policy. After the meeting Western continued to make loans to Gaudin's investors. According to Gaudin, Western assured him that it had consulted with its home office and the FHA, had found no violation of FHA regulations, and would continue to make loans to Gaudin's purchasers as it had in the past.
 
 
 9
 However, in April of 1987, Western's home office discovered that nearly 60 loans originated by Gaudin had been assumed by entities listing the same address as Gaudin's. Western notified the Helena, Montana office of the FHA of this information. According to his affidavit, the manager of the FHA office, Chris Kafentzis, "instructed Western that no more loans be issued to Gaudin or any of his investors." There is no evidence that Western proffered inaccurate information to the FHA, or that the agency lacked discretion to refuse to insure the loans. Gaudin offered no proof that the FHA exceeded its authority or engaged in any wrongful conduct.
 
 
 10
 On April 28, 1987, Western told Gaudin that it would no longer make loans for the purchase of Gaudin's properties and that all pending loan applications had been denied. Gaudin argues that Western's stated change in its lending policy in April of 1987--to prohibit loans with an equity down payment or loans on properties more than 50 miles from Western's offices--was a pretext masking Western's decision to no longer make loans on properties in which Gaudin had an interest. He also argues that Western wanted to focus FHA attention on Gaudin to divert attention from Western's own failure to comply with an FHA requirement that the lender conduct face-to-face interviews with prospective borrowers. Regardless, the FHA's refusal to insure any more loans for the purchase of Gaudin's properties necessarily meant that Western's alleged contractual promise to Gaudin was at an end. Whether characterized as impossibility of performance, failure of a condition precedent, or simply no breach of contact, this undisputed fact entitled Western to summary judgment on the contract claim.
 
 
 11
 In his reply brief Gaudin argues that the district court also erred in granting summary judgment on his fraudulent misrepresentation, negligent misrepresentation, and constructive fraud claims. These issues are waived since they were not raised in Gaudin's opening brief. In re Pacific Enters. Securities Litigation, 47 F.3d 373, 379 n. 6 (9th Cir.1995) ("Because [appellant] did not raise this issue in his opening brief, we do not consider it."); United States v. Bentson, 947 F.2d 1353, 1356 (9th Cir.1991) ("Legal issues raised for the first time in reply briefs are waived."). Gaudin suggested in oral argument that these issues were incorporated into his opening brief by reference to his district court summary judgment briefs. However, Ninth Circuit Rule 28-3.2 provides that "[p]arties must not append or incorporate by reference briefs submitted to the district court ... or refer this Court to such briefs for their arguments on the merits of the appeal." See also United States v. Marchini, 797 F.2d 759, 767 (9th Cir.1986); In re Yaqman, 796 F.2d 1165, 1170 n. 1 (9th Cir.1986).
 
 
 12
 AFFIRMED.
 
 
 
 **
 Honorable Thomas M. Reavley, Senior United States Circuit Judge for the United States Court of Appeals, Fifth Circuit, sitting by designation
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir. R. 36-3