**In the Matter of Robert S. CLARK, Shirley Clark, Debtors.**

**Robert S. CLARK, Shirley Clark, Plaintiffs,**

v.

**UNITED STATES of America, Department of the Treasury Internal Revenue Service, et al., Defendants.**

Bankruptcy No. 93–34583.
Adversary No. 96–280.

United States Bankruptcy Court,
S.D. Ohio,
Western Division.

March 20, 1997.

Christopher M. Hawk and Beverly F. Hawk, Dayton, Ohio, for Debtors.

Terry Serena, Special Assistant United States Attorney, Cincinnati, Ohio, for U.S. (I.R.S.)

Dale Goldberg, Office of the United States Attorney, Dayton, Ohio.

George W. Ledford and Jose Vasquez, Chapter 13 Trustee's Office, Englewood, Ohio.

## DECISION ON ORDER DETERMINING THE UNITED STATES OF AMERICA, THE INTERNAL REVENUE SERVICE, VIOLATED THE PROVISIONS OF 11 U.S.C. § 362 AND AWARDING DAMAGES

THOMAS F. WALDRON, Bankruptcy Judge.

Although a variety of pleadings and memoranda have been filed by the Internal Revenue Service, the debtors, and the Chapter 13 Trustee in both the estate case and the adversary proceeding, the parties agreed that the issues presented are whether the Internal Revenue Service's postpetition levy, without having obtained relief from the stay, on the debtor Robert C. Clark's wages consti-

tuted a violation of the provisions of 11 U.S.C. § 362 and, if so, what damages should be awarded to the debtors.

The procedural issues presented in this adversary proceeding and the related estate case could appear to be complicated; however, the parties agreed that determinations entered in the adversary proceeding would be binding on similar issues presented by filings in the estate case. Additionally, the original Complaint for Temporary Restraining Order, Preliminary Injunction, and Permanent Injunction and for Compensatory And Punitive Damages for Violation of 11 U.S.C. § 362 and Violation of the Order Confirming the Chapter 13 Plan (Doc. 1–1) together with the related filings by the defendant, the United States of America, the Internal Revenue Service ("the Service") and Patricia F. Hopkins, an employee of the Service, and George W. Ledford, the Chapter 13 Trustee, are the subject of an Interim Agreed Order (Doc. 18–1) which dismissed the named defendant, Patricia F. Hopkins, provided that the approximately $266.80 withheld from debtor Robert C. Clark's wages would be returned to the debtors with interest, and that the Service would not reinstitute the levy against the debtors pending the final order of the court.

The evidence in this adversary was presented in written Joint Stipulations Of Fact (Doc. 26–1), oral stipulations by the parties without sworn testimony, including the information contained on page 7 of the Chapter 13 Trustee's Response Memorandum (Doc. 22–1) and information contained in the Affidavit of Patricia F. Hopkins attached to the Supplemental Memorandum of the United States (Doc. 19–1), information contained in the debtors' Schedules I and J, which are part of the debtors' Petition (Doc. 1–1—Estate Case No. 93–34583), the testimony of the debtor, Robert C. Clark, and the testimony of Patricia F. Hopkins, Chief, Support & Insolvency Unit. All such evidence on significant issues was uncontradicted, and both witnesses were credible in their testimony.

The following is a simple summary of the relevant facts. The debtors filed this case on December 28, 1993. At that time the debtors owed federal income taxes for the years 1985 through 1992. The Order Confirming Chapter 13 Plan (Doc. 15–1) was entered March 15, 1994 and confirmed the debtors's plan (Doc. 1–1), providing for payments of $365.00 per month for approximately sixty (60) months until allowed unsecured claims were paid 5% or until the total plan payments are the equivalent of thirty-six (36) monthly payments, whichever is greater. The debtor's plan provided for the full payment of claims of the Service listed by the debtor in a priority amount of $11,022.00. The Service filed a Proof Of Claim in the amount of $14,430.49 on May 2, 1994 and an Amended Proof Of Claim in the amount of $14,634.78 on August 3, 1994.

Following the confirmation of the debtors' plan, the debtors continued to incur postpetition federal income tax liabilities and, as of approximately October 28, 1996, these taxes remained unpaid in the amount of $6803.48. On July 22, 1996, the Service sent a letter to the debtor demanding payment of the postpetition taxes. On September 19, 1996, debtors' counsel wrote a letter to the Service requesting that the Service cease any contact with the debtor unless the Service obtained relief from the automatic stay. On October 28, 1996, the Service again wrote the debtors advising them that a notice of federal tax lien would be filed, and on October 28, 1996, the Service issued a continuing wage levy to the debtor Robert C. Clark's employer and received two payments of $133.40 each following this levy. These funds, together with interest, were returned to the debtors pursuant to the parties' Interim Agreed Order (Doc. 18–1) entered January 3, 1997.

In addition to the various pleadings and memoranda submitted by the parties, on February 3, 1997, the debtors' attorney submitted Debtors' Attorney's Fees As Of February 2, 1997 (Doc. 21–1) and its related attachments that detail the hours spent by debtors' counsel computed at a rate of $75.00 per hour and resulting in a total amount of Two Thousand, Three Hundred Eighty–Five Dollars ($2,385.00). The Service filed a Statement Of Intention Re: Debtors' Claim For Attorney Fees (Doc. 23–1) which clarified that the Service "does not intend to object to the overall reasonableness, as a

**562**

matter of fact, of the itemized claim for attorney fees in this matter;" however, the Service did object to any allowance of attorney fees as a matter of law and requested that, if any attorney fees were allowed, any such award should be reduced based on the debtors' failure to properly determine whether Patricia F. Hopkins could be named as a defendant at the time she was listed in the original complaint filed in this proceeding. In all material respects, the debtors and the Chapter 13 Trustee share the same view, and accordingly, the references to the debtors' positions in the balance of this decision include, generally, the trustee's positions.

It is accurate, but understated, to note that the Service and the debtors have diametrically opposing views of the central issue in this proceeding. The debtors' position simply stated is that as a result of clear provisions in the proposed plan confirmed by the court in this case, the Bankruptcy Code requires the Service to obtain relief from the stay prior to attempting any collection from the debtors' wages, including any efforts to collect postpetition income tax liabilities. The Service's position is that despite the specific provisions of the debtors' confirmed chapter 13 plan, because the tax liabilities were incurred postpetition, the Bankruptcy Code does not prevent the Service from levying on the debtors' wages without obtaining relief from the stay.

■ As the United States Supreme Court has continually reminded lower courts in examining the provisions of the Bankruptcy Code, "[w]e have stated time and time again that courts must presume that a legislature says in a statute what it means and means in a statute what it says there." *Connecticut Nat'l Bank v. Germain*, 503 U.S. 249, 253–254, 112 S.Ct. 1146, 1149, 117 L.Ed.2d 391 (1992) (citation omitted). That statement is consistent with the United States Supreme Court's principles that statutory interpretation is a holistic endeavor which must begin with the language of the statute itself. Resort to an examination of legislative history is appropriate only to resolve statutory ambiguity, and in the final analysis, such examination must not produce a result demonstratively at odds with the purpose of the legislation. *See Taylor v. Free-*

*land & Kronz*, 503 U.S. 638, 112 S.Ct. 1644, 118 L.Ed.2d 280 (1992); *Pennsylvania Dept. of Public Welfare v. Davenport*, 495 U.S. 552, 110 S.Ct. 2126, 109 L.Ed.2d 588 (1990); *Kelly v. Robinson*, 479 U.S. 36, 107 S.Ct. 353, 93 L.Ed.2d 216 (1986).

■ Although the issues in this proceeding involve consideration of various Bankruptcy Code provisions, the primary Code Section is 11 U.S.C. § 1327 Effect Of Confirmation, which provides:

(a) The provisions of a confirmed plan bind the debtor and each creditor, whether or not the claim of such creditor is provided for by the plan, and whether or not such creditor has objected to, has accepted, or has rejected the plan.

(b) Except as otherwise provided in the plan or the order confirming the plan, the confirmation of a plan vests all of the property of the estate in the debtor.

(c) Except as otherwise provided in the plan or in the order confirming the plan, the property vesting in the debtor under subsection (b) of this section is free and clear of any claim or interest of any creditor provided for by the plan.

Specifically relevant for the determination of the issues in this proceeding is § 1327(b)'s language which provides *"Except as otherwise provided in the plan or the order confirming the plan,* the confirmation of a plan vests all of the property of the estate in the debtor." (emphasis added). The order confirming debtors' chapter 13 plan in this case (Doc. 15–1) entered March 15, 1994, contains the following specific provision:

IT IS FURTHER ORDERED:

(a) that all property of the debtor and of the estate as defined by 11 U.S.C. 1306(a) is within the exclusive jurisdiction of the Court and the debtor shall not without written consent of the Chapter 13 Trustee or order of the court sell or otherwise dispose of or transfer such property other than in accordance with the terms of the confirmed plan;

(b) *that all property shall remain property of the estate and shall vest in the debtor only upon dismissal, discharge or conversion.* The debtor shall be responsi-

ble for the preservation and protection of all property of the estate. (emphasis added).

It is clear that the confirmed plan, consistent with the provisions of § 1327(b), did not vest property of the estate in the debtor as long as the case remains pending and has not been dismissed, converted, or a discharge entered. It is also clear that the debtors' case remains pending and has not been dismissed or converted, nor has a discharge been entered.

Consistent with the applicable principles announced by the United States Supreme Court, the plain language of the statute and the confirmed plan compels the conclusion that all property of the debtors and the estate remains within the exclusive jurisdiction of this court and has not vested in the debtors. The court notes that although the Service filed various memoranda containing citations to numerous cases, the Service candidly conceded that no case cited by the Service contains a discussion of a confirmed chapter 13 plan which contains provisions similar to those set out above.

Although the above analysis would appear to resolve this initial issue, some further discussion is appropriate. An additionally relevant section of the Code is 11 U.S.C. § 1306 which provides:

(a) *Property of the estate includes,* in addition to the property specified in section 541 of this title—

(1) *all property* of the kind specified in such section *that the debtor acquires after the commencement of the case* but before the case is closed, dismissed, or converted to a case under chapter 7, 11, or 12 of this title, whichever occurs first; and

(2) *earnings from services performed by the debtor after the commencement of the case* but before the case is closed, dismissed, or converted to a case under chapter 7, 11, or 12 of this title, whichever occurs first.

(b) *Except as provided in a confirmed plan or order confirming a plan,* the debtor shall remain in possession of all property of the estate. (emphasis added).

A major distinction between chapter 13 and chapter 7 is that in chapter 13 cases property of the estate specifically includes earnings from services performed by the debtors after commencement of the case. It is the very essence of a chapter 13 case that the debtors' future income, except for what has been determined to be necessary for the support of the debtor or the debtors' dependents (§ 1325(b)), must be committed to the execution of the debtors' plan (§ 1322(a)(1)). At the time of the final hearing in this proceeding, the court received the trustee's evidence that:

To the Trustee's knowledge there are few courts, such as this court, which prevent revesting of property to the debtor upon confirmation of a chapter 13 plan. In the 1994FY in the Dayton Bankruptcy Court the completion rate of confirmed chapter 13 cases was approximately 63.23% cases which was the top completion rate for the 74 trustees with at least 2,400 active cases. In the 1995FY this completion rate was 64.10% which was the fourth best completion rate of confirmed cases of the 79 trustees with at least 2400 active cases. This trustee submits that the nonrevesting provision of the Dayton plans and confirmation orders contribute to this completion rate as creditors are not seizing property which is necessary for the debtors to comply with the plans and to survive on for their living expenses. (footnote omitted)

Using reported decisions as a measuring stick, the Trustee is clearly correct that most chapter 13 cases across the nation do not delay the revesting of the property of the estate in debtors as the "Dayton Plans" do. Among those chapter 13 cases in which the vesting of the property of the estate is not delayed under § 1327(b) and property of the estate is allowed to vest in the debtor upon confirmation, courts have varied widely in their treatment of postpetition debt vis-a-vis postconfirmation earnings. The various approaches were adeptly summarized in *United States Postal Service v. Black (In re Heath),* 198 B.R. 298 (S.D.Ind.1996):

The positions of the various courts can essentially be divided along four theories:

1. The first line of cases holds that upon confirmation of a Chapter 13 plan, absent a contrary provision in the plan or order of confirmation, all property revests in the debtor and the estate terminates. Consequently, post-petition creditors are free to pursue these funds to satisfy post-petition debts. (*citations omitted*).

2. The second line of cases holds that wages earned by a debtor post-petition remain property of the estate and the automatic stay applies to fully protect these post-petition earnings. (*citations omitted*).

3. The third line of cases holds that post-confirmation earnings which are not committed to funding the plan are not part of the estate. (*citations omitted*).

4. A fourth line of cases essentially holds that confirmation does not terminate the automatic stay, although the cases are not in agreement as to why or to what extent the stay continues to apply. (*citations omitted*).

*Heath,* 198 B.R. at 303–304. Under each of these approaches, a postpetition creditor is free to pursue collection against any property that is not property of the estate. The position argued by the Service is most closely aligned with the third approach set out above inasmuch as the Service's levy did not reach any part of Debtor Robert C. Clark's wages which were necessary to fund the debtors' chapter 13 plan.

However, any analysis directed at determining what part of the estate reverted to the debtors upon confirmation, and hence became subject to a postpetition creditor's collection efforts, is simply irrelevant to the case at hand. All of the approaches discussed in *Heath* deal with chapter 13 plans under which at least some part of the property of the estate revests in the debtor upon confirmation. Under such plans, there is some property that upon confirmation ceases to become property of the estate protected by the automatic stay. The analyses set out in *Heath* represent the various approaches to determining whether postconfirmation earnings remain part of the property of the estate which is protected by the automatic stay, or whether such earnings become property of

the debtor which is subject to collection efforts by postpetition creditors.

In stark contrast to chapter 13 plans which leave open the question of what property will become subject to postconfirmation collection efforts, the chapter 13 plan confirmed in this case answers such questions before they arise. As noted above, the confirmation order provides that *all* property of the debtor and of the estate as defined by § 1306(a), which expressly includes postpetition earnings, remains subject to the exclusive jurisdiction of the court, and that all property shall remain property of the estate and shall vest in the debtor *only* upon dismissal, discharge or conversion. Therefore, no property of the estate and no part of the debtors' postconfirmation earnings ceased to be property of the estate protected by the automatic stay.

The conclusion compelled by the clear language of the debtors' plan, the court's confirmation order, and the applicable provisions of the Bankruptcy Code, is that the debtors' postpetition wages remain property of the estate, and have not revested in the debtors; and, as a result, remain protected by the automatic stay. The Service may not take any action to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate, nor may the Service act to create, perfect, or enforce any lien against property of the estate, without first obtaining relief from the stay. § 362(a)(3) and (a)(4).

The court recognizes, that while the automatic stay may adversely impact the substantive rights of creditors, the purpose of the automatic stay is not substantive, but procedural. The automatic stay is intended as a form of procedural protection under which the debtor in a chapter 13 case can prepare, present, and execute a proposed plan free from unauthorized creditor pressure. The purpose of the automatic stay is not to ultimately determine the substantive rights of any party, nor to ultimately prevent the exercise of the available rights of any party. A great number of the actions prohibited by the automatic stay (seizures, foreclosures, statutory notices, and demands) may be permitted when relief from the stay

has been obtained or the automatic stay no longer applies. It is, however, the purpose of the automatic stay, during its pendency, to prevent any creditor from becoming a self-determined arbiter of what constitutes property of the estate and what actions are permitted or prohibited by the stay. *Smith v. First America Bank, N.A. (In re Smith),* 876 F.2d 524, 525–26 (6th Cir.1989); *In re Sharon,* 200 B.R. 181 (Bankr.S.D.Ohio 1996); *Ledford v. Fidelity Fin. Servs. (In re Hill),* 174 B.R. 949 (Bankr.S.D.Ohio 1994).

The Bankruptcy Code interfaces with a wide variety of commercial and legal relationships. Invariably, this results in at least a delay in the exercise of otherwise available nonbankruptcy remedies and rights, and in some instances, the impairment or loss of otherwise available nonbankruptcy remedies and rights. These results, while understandably unsatisfactory to individual creditors, comprise a portion of the overall Congressional allocation of economic risks in connection with bankruptcy legislation. Congress placed the court at the vortex of bankruptcy proceedings and the provisions of the automatic stay are designed as the initial channels that regulate the flow of economic consequences, which, if left unchecked or diverted by extra judicial determinations, would drown a debtor's opportunity for a fresh start and destroy a creditor's opportunity to receive payments pursuant to a confirmed chapter 13 plan. Unless a particular proceeding is specifically designated an exception to the automatic stay (§ 362(b)), creditors must obtain relief from the stay (§ 362(a)) *prior* to taking any action involving property of the estate. To the extent creditors fail to do so, they act at their own peril.

The court further observes that to the extent there is any case law interpreting the specific provisions of a chapter 13 plan that is the same as the chapter 13 plan confirmed in this proceeding, that decision is from Chief Judge William A. Clark of this court. *See RTO Rents v. Benson (In re Benson),* 116 B.R. 606 (Bankr.S.D.Ohio 1990). In that case, the creditor appropriately sought relief from the provisions of the automatic stay,

and the court granted the postpetition creditor relief from the stay.

Given the procedural nature of the automatic stay, and as further indicated by *Benson,* postpetition creditors are by no means at the mercy of a dishonest debtor. As pointed out above, the imposition of the automatic stay primarily has procedural, and not substantive, impact on a creditor's claim. Any creditor, including a postpetition creditor, therefore has a number of remedies. Such a creditor can simply move for relief from the automatic stay, and if relief is granted, may pursue any assets of the debtor that are subject to the order granting relief. If a creditor felt that the automatic stay did not apply and thus obtaining relief was not necessary, the creditor could bring an action for a declaratory judgment to that effect. A creditor may also move the court for dismissal of the debtor's chapter 13 case or for conversion of the chapter 13 case to one under chapter 7. As pointed out in *Benson,* a creditor could also simply wait for a discharge to be entered, and may then pursue any assets of the debtor for collection since all of the debtor's assets would have vested in the debtor upon discharge and been freed of all claims of prepetition creditors. *See Benson,* 116 B.R. at 608 and n. 5. Moreover, the Service is given at least one collection option unavailable to many postpetition creditors in that the Service could have filed a postpetition claim under § 1305(a)(1) for the postpetition taxes.

However, one option that is not available to a creditor in the Service's position is to simply ignore the provisions of the chapter 13 plan and the confirmation order, and to proceed with self-help remedies in violation of the automatic stay which remained in full force and effect under the plan and confirmation order. Although the Service would clearly prefer that chapter 13 plans not contain the delayed revesting provisions that are contained in the debtors' case, such a "policy argument" is more appropriately made to Congress to change the applicable Code provisions to eliminate the plain language that specifically authorizes such plans.[1]

**1.** Even where Congress has provided an excep-  tion to the operation to the automatic stay by

This court is compelled at this point to observe that although the Service has more than sufficient resources to choose among the many options it has for presenting its concerns to this court, it chose not to exercise any of them, including simply filing a motion seeking relief from the stay;[2] but rather, in the face of a reported decision, *Benson,* discussing the necessity of seeking relief from the stay in Chapter 13 cases confirmed by this court, and in the absence of any single case citation applicable to the terms of the confirmed plan in this proceeding, the Service directly violated the provisions of § 362(a)(3) and (4). In such circumstances, the provisions of § 362(h) and § 106 combine to provide a basis to award damages for such violations.

■ The debtors have clearly established the amount of the award of attorney fees; however, some brief comment is appropriate with regard to the Service's assertion that there should be a reduction in the amount of the attorney fees awarded as a result of debtors' counsel's failure to make reasonable inquiry concerning the naming of Patricia F. Hopkins, an employee of the Service, as a party in the initial complaint. Although the Service may have prevailed on such a position, the issue was neither adequately briefed nor developed. Additionally, at a hearing held less than nine (9) days after the filing of the complaint naming Patricia F. Hopkins, an agreement was reached that she would be dismissed from the proceeding. It is also clear that the filings and appearances of counsel on behalf of the Service were required as a result of the numerous other serious bankruptcy issues raised and not as a result of having Patricia F. Hopkins named in the initial complaint. Likewise, the appearance of Ms. Hopkins at various hearings was incidental to, not as a result of, being named in the plaintiffs' complaint. Additionally, the court notes that the amount of the award of attorney fees only extends through February 2, 1997 and does not include subsequent filings in February by debtors' counsel, nor does it include debtors' counsel's time at the final hearing held on February 19, 1997. Finally, in the absence of some clear authority for naming an employee of the Service, such as Ms. Hopkins, the court does not anticipate seeing this issue presented in future filings by debtors' counsel. The court concludes there is no basis to reduce the amount of attorney fees sought by debtors' counsel on either legal or equitable grounds.

■ This court has in a series of decisions, most recently in *In re Sharon,* 200 B.R. 181 (Bankr.S.D.Ohio 1996), discussed the basis for awards when a violation of the automatic stay has been determined. The court has noted, "The amount of the award is subject to several factors. The issue of attorney fee awards pursuant to § 362(h) was analyzed in *In re McLaughlin,* 96 B.R. 554 (Bankr. E.D.Pa.1989), where the court observed that 'rewarding debtors too lavishly in § 362(h) actions will encourage a cottage industry of precipitous § 362(h) litigation', but also recognized that 'counsel for a debtor who is jeopardized in any significant manner by a stay violation and reasonably resorts to court to remedy the violation, should recover at least some measure of damages.' " *Sharon,* 200 B.R. at 201 (citations omitted). The Service's wage levy significantly jeopardized the debtors.

recent amendments (§ 362(b)(9)(D)), the limited exception to the automatic stay concerning assessment and issuance of a notice and demand for payment of such an assessment, (but not the actual collection of such a tax), provides that the lien would not attach to property of the estate unless, among other reasons, the property or its proceeds are *revested in the debtor.* (emphasis added) Such a provision indicates that in its most recent consideration of exceptions to the automatic stay, Congress recognized that there are bankruptcy cases where property would not revest in a debtor, which is exactly the factual and legal situation presented in this proceeding.

2. As the *Benson* court noted in granting relief from the stay, "following the confirmation process, the debtor essentially emerges with the contracts between himself and his creditors having been rewritten as evidenced by his proposed plan and the confirmation order. However, the court-approved compact between the debtor and his prepetition creditors does not shield him from his postpetition dealings in the world. In this regard a chapter 13 debtor should be subject to the same financial consequences of his every day actions as a nondebtor." (footnote omitted) *Benson,* 116 B.R. at 608.

The court further notes that in addition to the absence of an objection to the reasonable hours and reasonable rates, the court, pursuant to the applicable principles of *In re Boddy,* 950 F.2d 334 (6th Cir.1991), independently reviewed the requested fees (Doc. 21–1) and determined that all of the services rendered by debtors' counsel were reasonable, necessary, and beneficial to the debtors. Further, the debtors were required to obtain the services of counsel and resort to the court, since debtors' counsel had specifically communicated with the Service for purposes of attempting to persuade the Service to seek relief from the stay or take some other action that would have prevented the stay violation and subsequent court action in this proceeding.

Accordingly, the court determines that the debtors are entitled to an award of damages in the amount of Two Thousand, Three Hundred Eighty–Five Dollars ($2,385.00) for the attorney fees incurred by the debtors as a result of the Service's violation of the provisions of 11 U.S.C. § 362.

An order in accordance with this decision is contemporaneously entered.

**SO ORDERED.**