**IN RE: Shatonia Yvette MONTGOMERY,**
**Debtor.**

**Case No. 10–10866**

United States Bankruptcy Court, W.D. Tennessee, Eastern Division.

Signed January 14, 2015

James E. Bailey III, attorney for Chapter 13 Trustee

Ari D. Kunofsky, attorney for Internal Revenue Service

C. Jerome Teel, Jr., attorney for Debtor

## MEMORANDUM OPINION RE: STANDING CHAPTER 13 TRUSTEE'S MOTION TO QUASH IRS LEVY

Jimmy L. Croom, UNITED STATES BANKRUPTCY JUDGE

This proceeding is before the Court on the Standing Chapter 13 Trustee's motion to quash a levy issued by the Internal Revenue Service ("IRS") against a creditor in several bankruptcy cases in the Western District of Tennessee, Eastern Division. The Standing Chapter 13 Trustee ("Trustee") alleges that the IRS levy violates the

automatic stay under 11 U.S.C. § 362(a), imposes an unacceptable burden on the Trustee's office, and could imperil the debtor's fresh financial start.[1] For its part, the IRS argues that the levy does not violate the automatic stay. The Court conducted a hearing on the Trustee's motion to quash the levy and the IRS's response thereto on November 20, 2014.

For the reasons that follow, the Court concludes that the IRS levy does indeed violate the provisions of the automatic stay of 11 U.S.C. § 362. As such, the Court will grant the Trustee's motion to quash the levy, but will do so without legal prejudice to the IRS subsequently filing a motion under 11 U.S.C. § 362(d)(1) and Federal Rule of Bankruptcy Procedure 4001(a) seeking relief from the automatic stay. After notice and a hearing, and for cause shown, the Court shall grant relief from the stay.

## STATUTORY AUTHORITY AND JURISDICTION

This proceeding arises in a case referred to this Court by the Standing Order of Reference, Misc. Order No. 84–30, previously entered by the United States District Court for the Western District of Tennessee, Western and Eastern Divisions. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (B), (G), and (O). This Court has the statutory authority and jurisdiction over core proceedings pursuant to 28 U.S.C. §§ 157(b)(1) and 1334 to hear and enter a final order in this matter subject to traditional appeal rights. This memorandum opinion shall serve as the Court's findings of facts and conclu-

---

1. The Trustee further alleges that the IRS is equitably estopped from enforcing the levy based on email exchanges with the United States Attorney's office; however, because the IRS clarified at the hearing in these matters that it is not presently seeking 26 U.S.C. § 6332(d)(2) sanctions against the Chapter 13 Trustee, the Court concludes that any discussion of the Trustee's equitable estoppel argument is unnecessary at this juncture.

sions of law pursuant to Federal Rule of Bankruptcy Procedure 7052.

## FACTS

On March 28, 2014, the IRS sent a Notice of Levy on Wages, Salary, or Other Income ("Notice of Levy") to the Trustee seeking to collect all disbursements to which a West Tennessee business entity, Highway 64 Car and Truck Sales ("Highway 64"), would be entitled, as a creditor, in *all* pending Chapter 13 cases in this judicial district. At the time of the levy, Highway 64 was receiving payments as a secured creditor from the Trustee in a number of cases in the Western District of Tennessee, Eastern Division. In its levy, the IRS indicated that Highway 64 owed back taxes to the federal government and the IRS was entitled to collect all amounts necessary to satisfy Highway 64's overdue tax debt. The levy did not identify any particular cases in which it believed Highway 64 was a creditor. That burden fell to the Trustee's office. The IRS levy left to the Trustee and his staff the task of:

(i) identifying whether Highway 64 was a creditor in any pending case; (ii) determining whether Highway 64 had filed a claim in any pending case; (iii) determining whether Highway 64 [had] already been paid in full in any such case; and (iv) determining whether any or sufficient funds were on hand in any such case to make a payment to Highway 64.

(*Tr. Reply in Support of Mot. to Quash,* ECF No. 110 at 1.)

On its own initiative, the Trustee's office determined that, on the date the levy was issued, Highway 64 was a creditor in twelve Chapter 13 bankruptcy cases with confirmed plans in the Western District of Tennessee, Eastern Division. In nine of the twelve cases, the Trustee asserts Highway 64 was not entitled to a disbursement because it had either failed to file a proof of claim or its claim had already been paid in full. In the three other cases, the undispersed amounts held by the Trustee at the time the Notice of Levy was served were as follows:

| Debtor's Name | Case No. | Ch. 13 Tr.'s Balance on Hand as of 3/28 | Amount Received Between 3/28 and 4/14 | Amount Highway 64 Would Have Received if Disbursement was on 3/28 | Amount Disbursed to Highway 64 on 4/14 |
|---|---|---|---|---|---|
| Keno Palmer | 13-11389 | $58.93 | $123.00 | $0.00 | $63.00 |
| Torayo Brown | 11-12607 | $163.98 | $340.00 | $0.00 | $43.00 |
| Toneka Allen | 11-12927 | $349.59 | $176.00 | $235.00 | $235.00 |
| | Totals | $572.50 | $639.00 | $235.00 | $341.00 |

(*Tr. Reply,* ECF No. 110 at 3.)

As of March 28, 2014, the Trustee held a total of $572.50 attributable to the three remaining Chapter 13 cases. Because 11 U.S.C. § 1326 statutorily prohibits a Chapter 13 Trustee from making a distribution to any claimant in a particular class until there are enough funds to pay all claimants, only the $235.00 monthly payment attributable to Chapter 13 case number

11–12927, In re Toneka Allen, was subject to distribution at the time the IRS issued the levy. Based on conversations with the United States Attorney's office, the Trustee believed that the levy would probably be withdrawn. As a result, on April 14, 2014, the Trustee disbursed the $235.00 in Toneka Allen's case to Highway 64 pursuant to the terms of the confirmed plan and 11 U.S.C. § 1326.

The debtor in Chapter 13 case number 13–11389, Keno Palmer, voluntarily dismissed his case on October 3, 2014. *See* 11 U.S.C. § 1307(c). The Trustee made the final payment on Highway 64's claim in Toneka Allen's case after the levy was issued. According to the Trustee, there is now only one pending case in which Highway 64 is a creditor, Chapter 13 case number 11–12607, In re Torayo Brown. In that case, Highway 64 filed a proof of claim for $1,775.45 on March 15, 2012. As of the hearing in this matter, Torayo Brown had paid $1,016.00 of the principal on Highway 64's claim, and the Trustee had approximately $75.00 on hand earmarked for payment to Highway 64. The confirmed plan in Torayo Brown's case provides that Highway 64 was to receive additional payments of $54.00 per month until the remaining balance of $684.45 was fully satisfied. However, Torayo Brown has not made a plan payment since September 2014 so any further recovery seems increasingly unlikely. The Trustee has delayed moving for a case dismissal of Torayo Brown's case in order to maintain the status quo pending resolution of the present matter.

The Trustee filed a motion to quash the IRS levy on June 26, 2014. The Trustee challenges the levy on three grounds. First, the Trustee asserts the levy is an attempt to "obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate" in violation of the automatic stay under 11 U.S.C. § 362(a)(3). Second, the Trustee "believes that honoring the IRS levy against Highway 64 will create an undue hardship and cause irreparable damage to the debtor[s], as the creditor will not give credit for Trustee payments made." (*Tr. Mot. to Quash*, ECF No. 84 at 2, ¶ 5.)

In support of the levy, the IRS argues that its actions do not violate the 11 U.S.C. § 362(d) automatic stay because the levy does not deplete the estate or attempt to control property of the estate. Rather, the levy merely seeks to intercept plan payments that are payable to Highway 64 as a creditor of various debtors in the Western District of Tennessee, Eastern Division: "A federal levy allows the United States to step into the taxpayer/creditor's shoes, and it only acquires whatever rights the taxpayer/creditor (i.e., Highway [64]) possesses." (*IRS Resp. to Tr. Mot. to Quash*, ECF No. 94 at 2.) Furthermore, the IRS assures the Trustee that compliance with the levy will discharge the debtors' obligations to Highway 64 pursuant to 26 U.S.C. § 6332(e).[2]

---

**2.** 26 U.S.C. § 6332(e) provides:

Any person in possession of (or obligated with respect to) property or rights to property subject to levy upon which a levy has been made who, upon demand by the Secretary, surrenders such property or rights to property (or discharges such obligation) to the Secretary (or who pays a liability under subsection (d)(1)) shall be discharged from any obligation or liability to the delinquent taxpayer and any other person with respect to such property or rights to property arising from such surrender or payment.

## ANALYSIS

### I. Undisbursed Funds Held by the Chapter 13 Trustee are Property of the Estate Protected by 11 U.S.C. § 362(a)(3).

■ The starting point of all statutory interpretation is the language of the statute itself. *Lamie v. U.S. Trustee*, 540 U.S. 526, 534, 124 S.Ct. 1023, 1030, 157 L.Ed.2d 1024 (2004). In *United States v. Ron Pair Enterprises, Inc.*, the Supreme Court provided specific guidance for interpreting the Bankruptcy Code: "The plain meaning of legislation should be conclusive, except in the rare cases [in which] the literal application of a statute will produce a result demonstrably at odds with the intentions of its drafters." 489 U.S. 235, 242, 109 S.Ct. 1026, 1031, 103 L.Ed.2d 290 (1989) (citation omitted). When "the statute's language is plain, the sole function of the courts is to enforce it according to its terms." *Id.* at 241, 109 S.Ct. at 1030 (internal citation omitted).

Under 11 U.S.C. § 362(a), filing a bankruptcy petition "operates as a stay, applicable to all entities,[3] of":

(1) the commencement or continuation ... of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title;

. . .

(3) any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate.

11 U.S.C. § 362(a)(1) and (3). "The automatic stay of § 362(a) applies by its terms not only to actions against the debtor, but also to actions seeking to obtain property of the bankruptcy estate." *Amedisys, Inc. v. Natl Century Fin. Enters., Inc. (In re Nat'l Century Fin. Enters., Inc.)*, 423 F.3d 567, 578 (6th Cir.2005) (citing 11 U.S.C. § 362(a)(1) and (3)). As Judge Magill recognized in his dissenting opinion in *Laughlin v. United States ex rel. IRS*: "The meaning of this language is plain: if the funds upon which the IRS levied are property of the estate, then the levy violated the automatic stay." 912 F.2d 197, 200 (8th Cir.1990). "Thus, ... the critical issue" in an inquiry such as the one in the case at bar is "whether funds held by a Chapter 13 Trustee for distribution to creditors under a confirmed plan constitute property of the estate." *Id.*

■ Section 541(a)(1)of the Bankruptcy Code defines "property of the estate" broadly to include "all legal or equitable interests of the debtor in property as of the commencement of the case."[4] Section 1306(a) expands the definition of "property of the estate" in Chapter 13 cases to include:

1) all property of the kind specified in [§ 541] that the debtor acquires after the commencement of the case but before the case is closed, dismissed, or converted to a case under chapter 7, 11 or 12 of this title, whichever occurs first; and,

2) earnings from services performed by the debtor after the commencement of the case but before the case is

---

**3.** By virtue of 11 U.S.C. § 101(15), the term "entity" includes, among others, a "governmental unit." Section 101(27) of the Bankruptcy Code defines "governmental unit" to mean the "United States."

**4.** *See United States v. Whiting Pools, Inc.*, 462 U.S. 198, 103 S.Ct. 2309, 76 L.Ed.2d 515 (1983).

closed, dismissed or converted to a case under chapter 7, 11, or 12 of this title, whichever occurs first.

11 U.S.C. § 1306(a). Funds in the hands of a Chapter 13 Trustee typically come from debtors' postpetition income. Absent one of the events described in 11 U.S.C. § 1306(a), these funds remain property of the estate. Thus, a plain reading of these Code sections compels the conclusion that undistributed funds in the hands of a Chapter 13 Trustee constitute property of the estate. Several courts have recognized this principle. *See, for example and among others, In re Johnson,* 335 B.R. 805, 806 (Bankr.W.D.Tenn.2006); *Clark v. United States (In re Clark),* 207 B.R. 559, 565 (Bankr.S.D.Ohio 1997).

■ Confirmation of a Chapter 13 plan does not change the "property of the estate" analysis. Section 1327(b) provides: *"Except as otherwise provided in the plan or order confirming the plan,* the confirmation of a plan vests all of the property of the estate in the debtor." 11 U.S.C. § 1327(b) (emphasis added.) Pursuant to orders confirming Chapter 13 plans in the Western District of Tennessee, all property which is defined as "property of the estate" by §§ 541 and 1306 of the Bankruptcy Code remains property of the estate until the debtor is discharged, the case is dismissed, or the court orders otherwise (e.g., grants relief from the automatic stay.) *See Confirmation Order,* ECF No. 28, ¶ 3. Furthermore, Chapter 13 confirmation orders in the Western District of Tennessee explicitly provide for the Bankruptcy Court's continuing exclusive jurisdiction under 28 U.S.C. §§ 157(a) and 1334(e) over undistributed funds: "the *debtor(s) future earnings shall remain under the exclusive control of this Court.* In the event of a case dismissal or conversion, funds held by the Trustee should be paid over to creditors unless otherwise ordered

by the Court." (*Id.,* ¶ 2) (emphasis added.) Accordingly, undistributed funds in the hands of a Chapter 13 Trustee in the Western District of Tennessee remain property of the estate postconfirmation absent a court order to the contrary. *See, for example, Johnson,* 335 B.R. at 806.

## II. The IRS Levy is an Act to Obtain Possession of Property of the Estate under 11 U.S.C. § 362(a)(3).

■ Section 362(a) of the Bankruptcy Code prohibits creditors from attempting to collect most debts from the debtor or property of the estate. *Smith v. First Am. Bank (In re Smith),* 876 F.2d 524, 526 (6th Cir.1989). "The automatic stay is among the most fundamental debtor [and creditor] protections in bankruptcy law and its scope in protecting debtors and debtor property is broad." *Cousins v. CitiFinancial Mortg. Co. (In re Cousins),* 404 B.R. 281, 286 (Bankr.S.D.Ohio 2009). As the *Cousins* court recognized, the legislative history of 11 U.S.C. § 362 provides an accurate description of the scope and purpose of the automatic stay:

> It gives the debtor a breathing spell from his creditors. It stops all collection efforts, all harassment, and all foreclosure actions. It permits the debtor to attempt a repayment or reorganization plan, or simply to be relieved of the financial pressures that drove him into bankruptcy.

> The automatic stay also provides creditor protection. Without it, certain creditors would be able to pursue their own remedies against the debtor's property. Those who acted first would obtain payment of their claims in preference and to the detriment of other creditors. Bankruptcy is designed to provide an orderly liquidation procedure in which all creditors are treated equally.

*Id.* at 286 (quoting H.R.Rep. No. 95–595 (1977) and S.Rep. No. 95–989 (1978)). The only exceptions to the automatic stay are found in 11 U.S.C. § 362(b). As will be discussed infra, none of these exceptions are applicable to the case at bar.

■ Section 362(c)(1) provides "the stay of an act against property of the estate under subsection (a) of this section continues until such property is no longer property of the estate." The orderly administration of property of the estate is thus at the very heart of the automatic stay:

> Congress placed the court at the vortex of bankruptcy proceedings and the provisions of the automatic stay are designed as the initial channels that regulate the flow of economic consequences, which, if left unchecked or diverted by extra judicial determinations, would drown a debtor's opportunity for a fresh start and destroy a creditor's opportunity to receive payments pursuant to a confirmed chapter 13 plan. Unless a particular proceeding is specifically designated an exception to the automatic stay (§ 362(b)), creditors must obtain relief from the stay (§ 362(a)) *prior to* taking any action involving property of the estate. To the extent creditors fail to do so, they act at their own peril.

*Clark,* 207 B.R. at 565 (internal citations omitted).

■ Contrary to the IRS's assertions here, the IRS' Notice of Levy is not merely an administrative act establishing its right to payment. Rather, it is a legal action seeking to possess or control property of this bankruptcy estate. When a taxpayer is delinquent in paying taxes, § 6321 of the Internal Revenue Code empowers the government to impose a lien on "all property and rights to property" belonging to the taxpayer. As it has done here, the government may initiate an administrative levy under 26 U.S.C.

§ 6331(a) to enforce its lien. As the Supreme Court recognized in *United States v. National Bank of Commerce,* 472 U.S. 713, 720–21, 105 S.Ct. 2919, 2924–25, 86 L.Ed.2d 565 (1985), this administrative levy is only a "provisional remedy." It "does not determine whether the government's rights to the property are superior to others." *Allstate Fin. Corp. v. United States,* 860 F.Supp. 653, 656 (D.Minn.1994). Stated another way, an administrative levy "merely *gives the Government temporary custody of the property* to protect against diversion or loss until claims against the property are resolved." *Id.* (emphasis added). Despite its nature as a "provisional remedy" for the collection of taxes, the levy nevertheless violates the automatic stay by asserting constructive possession of or over property of the estate. "Service of a notice of levy confers on the United States the right to all property levied upon and creates a custodial relationship so that the property comes into the constructive possession of the government." *United States v. Hemmen,* 51 F.3d 883, 887 (9th Cir.1995) (citing *Amer. Acceptance Corp. v. Glendora Better Builders,* 550 F.2d 1220, 1222–23 (9th Cir.1977)).

■ The IRS maintains that its levy has the practical effect of putting the United States in the shoes of Highway 64. According to the IRS, since the levy does not assert any right to payment beyond that due to Highway 64 it is no more a violation of the stay than any other post-confirmation assignment of a claim under Federal Rule of Bankruptcy Procedure 3001(e). (*IRS Resp.,* ECF No. 94 at 3) ("The United States cannot ask for anything more than what the Trustee is already required to pay to Highway [64] under the confirmed Chapter 13 plan. Thus, the United States is not depleting the estate.")

The Court concludes that the blanket IRS levy in this Chapter 13 case is fundamentally unlike the transfer of a claim under Federal Rule of Bankruptcy Procedure 3001(e). The rights asserted by the IRS in this case go well beyond those to which a typical creditor stepping into the shoes of Highway 64 would be entitled for several reasons.[5]

First, the broad demand of the IRS levy places the administrative burden of determining which payments, if any, Highway 64 was entitled to squarely on the shoulders of the Trustee. A claim transfer under Federal Rule of Bankruptcy Procedure 3001(e) requires the transferee to provide, at a minimum, evidence of a transfer of claim for which a proof of claim has been filed. Fed. R. Bankr. P. 3001(e). The levy at issue in this case is broadly stated to cover "this taxpayer's other income that you have now or for which you are obligated." (*IRS Levy, Ex. 1 of Tr. Reply,* ECF No. 110–1 at 2.) The Notice of Levy served on the Trustee in this case did not even identify cases in which Highway 64 was a creditor, let alone the specific proofs of claim or confirmed plans under which it was entitled to payment. Absent this crucial information, determining the IRS' rights under the levy required the Trustee and his staff to search *all* active Chapter 13 cases for ones in which Highway 64(i) was a creditor, (ii) that had filed a proof of claim, (iii) which had not already been paid in full, and (iv) for which there were sufficient funds on hand to make a payment. Although many of these tasks are part of the daily administrative duties of a Chapter 13 Trustee, the burden imposed by the levy has the effect of forcing the Trustee into conducting a fishing expedition on the IRS' behalf. This responsibility goes well beyond the typical duties imposed on a Chapter 13 Trustee. This fact is particularly clear when the administrative burden imposed by the levy is compared to that of Federal Rule of Bankruptcy Procedure 3001(e). Had the IRS filed a transfer of claim under Rule 3001(e), the Trustee would have been provided with sufficient information to immediately identify the cases in which Highway 64 had filed a proof of claim. Comparatively, the Notice of Levy sent to the Trustee provided no such information.

Second, the IRS takes the position that bankruptcy court review and approval of the government's rights to property of the estate pursuant to the levy are unnecessary. The scope of the levy, its continuous or fixed nature, and its application to funds subject to the jurisdiction of this Court are seriously ambiguous issues. Any creditor other than the IRS would have similar issues resolved by the claims allowance process. Comparatively, the IRS relies on the broad language of its levy to essentially circumvent the procedures typically governing the claims allowance process in bankruptcy.

---

5. It should be noted that the procedure outlined in Federal Rule of Bankruptcy Procedure 3001(e) is available to involuntary transferees, such as the IRS. *See* 11 U.S.C. § 101(54)(D) (defining "transfer" as "each mode, direct or indirect, absolute or conditional, voluntary or involuntary, or disposing of or parting with property or an interest in property."). According to *Collier on Bankruptcy,*

> Rule 3001(e) does not on its face provide for an involuntary transfer of a claim (i.e., levy and execution). However, such an involuntary transfer would be governed by the rule. Sufficient protection for the involuntary transferor exists by virtue of the notice and hearing provisions. The rule, however, does not substitute for any notices to the transferor which other law or an agreement might require.

9–3001 *Collier on Bankruptcy* ¶ 3001.08[1][d] (16th ed. 2014).

The Notice of Levy provides: "This levy requires you to turn over to us ... [Highway 64's] other income that you have now or for which you are obligated." (*IRS Levy, Ex. 1 of Tr. Reply,* ECF No. 110–1 at 2.) The extent to which the Trustee is "obligated" by this language is complicated by the intersection of the Bankruptcy Code with the Internal Revenue Code and its corresponding Treasury Regulations. According to Treasury Regulation § 301.6331–1(a)(1), "[o]bligations exist when the *liability of the obligor is fixed and determinable* although the right to receive payment thereof may be deferred until a later date." 26 C.F.R. § 301.6331–1(a)(1) (emphasis added). However, as the dissent in *Laughlin* emphasizes, a claimant's right to payment in a Chapter 13 case remains contingent until the Chapter 13 Trustee makes the disbursement:

> At any time after confirmation, a Chapter 13 debtor has an absolute right to have the case dismissed, 11 U.S.C. § 1307(b), to convert the case to Chapter 7, § 1307(a), or to request modification of the plan, 11 U.S.C. § 1329(a). Thus, any one of these actions could be taken during a period in which the trustee is holding estate funds postconfirmation pending their later distribution to creditors in accordance with the plan.... If the case is instead converted to Chapter 7, the funds become part of the Chapter 7 estate, which may very well result in a different distribution of those funds among creditors. A different apportionment of the funds may also result from modification of the plan to reduce the level of payments to a particular class of creditors, § 1329(a)(1), or from modification to alter the amount of the distribution to a creditor who has received a payment outside of the plan, § 1329(a)(3).

912 F.2d at 203 (Magill, dissenting) (internal citations omitted).

Both parties in the case at bar agree that payments made in preconfirmation cases, even though held by the Trustee and earmarked for payment to Highway 64 under 11 U.S.C. § 1326, are not sufficiently "fixed and determinable" to come within the Notice of Levy's scope. Furthermore, the Trustee asserts, and the IRS does not contest, that the levy does not apply to postconfirmation cases in which Highway 64 failed to file a proof of claim even though the terms of the confirmed plans in those cases provide Highway 64 with a right to payment as a secured claimant. Beyond that, it is unclear if the Notice of Levy is limited to undisbursed funds in possession of the Trustee at the time the Notice of the Levy was issued or if it extends to all future payments due Highway 64.

The IRS asserts its levy has a continuous effect and attaches to any payment that has been due and owing to Highway 64 since March 28, 2014. However, the plain language of the Internal Revenue Code seems to require successive seizures in situations analogous to the case at bar:

> Whenever any property or right to property upon which levy has been made by virtue of subsection (a) is not sufficient to satisfy the claim of the United States for which levy is made, the Secretary may, thereafter, and as often as may be necessary, proceed to levy in like manner upon any other property liable to levy of the person against whom such claim exists, until the amount due from him, together with all expenses, is fully paid.

26 U.S.C. § 6331(c). The only exception to the general rule of successive seizures is found in 26 U.S.C. § 6331(e). Section 6331(e) provides that a levy on salary and wages shall be continuous from the date the levy is first made until the levy is

released. It does not apply to "other income." The Court finds further support for the successive seizure interpretation in the majority opinion in *Laughlin*, wherein the majority analogized the role of the Chapter 13 Trustee to that of a bank:

> The IRS levy no more interfered with the purposes of the automatic stay under these circumstances than it would have had the notice of levy been served upon the bank in which the estate checks were deposited had they been sent to and received by the [Taxpayer] in due course.

*Laughlin*, 912 F.2d at 198–99. This analogy is particularly illustrative since the Treasury Regulations explicitly outline the effect § 6331 would have on a bank:

> For example, a levy made on a bank with respect to the account of a delinquent taxpayer is satisfied if the bank surrenders the amount of the taxpayer's balance at the time the levy is made. *The levy has no effect upon any subsequent deposit made in the bank by the taxpayer. Subsequent deposits may be reached only by a subsequent levy on the bank.*

26 C.F.R. § 301.6331–1(a) (emphasis added).

By far the most glaring omission in the Notice of Levy in the case at bar is any mention of the Treasury Regulation exception for funds in the custody of the Bankruptcy Court:

> Taxes cannot be collected by levy upon assets in the custody of a court, whether or not such custody is incident to a bankruptcy or receivership proceeding, except where the proceeding has progressed to such a point that the levy would not interfere with the work of the court or where the court grants permission to levy.

26 C.F.R. § 301.6331–1(a)(3). In serving the Notice of Levy, the IRS unilaterally asserted that the proceedings in each case have progressed to the point at which compliance with the levy will not interfere with the work of the court. This assertion was premature given that, at the time it was made, neither the IRS nor the Trustee had identified the cases to which the Notice of Levy would apply.

Finally, the Notice of Levy potentially imposes personal liability on the Trustee for failing to comply with its ambiguous terms. Section 6332(d) of the Internal Revenue Code provides:

> (d) Enforcement of levy.—
>
> *(1) Extent of personal liability.*—Any person who fails or refuses to surrender any property or rights to property, subject to levy, upon demand by the Secretary, *shall be liable in his own person and estate to the United States in a sum equal to the value of the property or rights not so surrendered,* but not exceeding the amount of taxes for the collection of which such levy has been made, together with costs and interest on such sum at the underpayment rate established under section 6621 from the date of such levy (or, in the case of a levy described in section 6331(d)(3), from the date such person would otherwise have been obligated to pay over such amounts to the taxpayer). Any amount (other than costs) recovered under this paragraph shall be credited against the tax liability for the collection of which such levy was made.
>
> *(2) Penalty for violation.*—In addition to the personal liability imposed by paragraph (1), if any person required to surrender property or rights to property fails or refuses to surrender such property or rights to property without reasonable cause, *such person shall be liable for a penalty equal*

*to 50 percent of the amount recoverable under paragraph (1).* No part of such penalty shall be credited against the tax liability for the collection of which such levy was made.

26 U.S.C. § 6332(d) (emphasis added). Although the IRS represented to the Court that it does not presently intend to seek penalties for the Trustee's noncompliance, the mandatory wording of § 6332(d) is enough to give pause to anyone in the Trustee's situation. Thus, the Trustee is put in the untenable position of deciding whether to honor his obligation under 11 U.S.C. § 1326(c) to "distribute any such payment in accordance with the plan as soon as practicable" or face personal liability for failure to comply with the Notice of Levy under 26 U.S.C. § 6332(d). (*Tr. Reply*, ECF No. 110 at 12–13.)

 Accordingly, the Notice of Levy asserts rights beyond those due a typical creditor filing a transfer of claim pursuant to Federal Rule of Bankruptcy Procedure 3001. The rights asserted by the IRS invade the jurisdiction of the Court and interfere with the orderly administration of the estate by unilaterally determining the extent to which the Court's jurisdiction applies. Accepting the IRS's interpretation of its Notice of Levy would allow the IRS to act as "a self-determined arbiter of what constitutes property of the estate and what actions are permitted or prohibited by the stay." *Clark*, 207 B.R. at 565. Such unilateral action indeed impacts the orderly administration of this bankruptcy estate. Thus, the Notice of Levy is not merely an administrative act, but a violation of the 11 U.S.C. § 362 automatic stay.[6] Ordinarily, "actions taken in violation of the automatic stay are invalid and voidable and shall be voided absent limited equitable circumstances." *Easley v. Pettibone*

*Mich. Corp.*, 990 F.2d 905, 911 (6th Cir. 1993).

### III. The IRS Levy Does Not Fall Under Any Exception to the Automatic Stay.

 As stated supra, § 362(b) of the Bankruptcy Code provides a list of 28 exceptions to the automatic stay. These exceptions are narrowly written and strictly construed. *Travelers Cas. & Sur. Co. of Am. v. Pac. Gas & Elec. Co.*, 549 U.S. 443, 453, 127 S.Ct. 1199, 1206, 167 L.Ed.2d 178 (2007). As the dissent in *Hemmen* recognized, "[t]he list includes an exception for 'issuance to the debtor by a governmental unit of a notice of tax deficiency;' [however], [t]here is no exception for notices of levy." 51 F.3d at 893 (Kleinfeld, dissenting) (quoting 11 U.S.C. § 362(b)(9)). Likewise, none of the § 362(b) exceptions apply in the present case.

 The IRS does not assert that the levy falls within any of § 362(b)'s exceptions. Rather, the IRS urges the Court to apply the judicially-crafted exception to the stay as outlined by the Eighth Circuit Court of Appeals in *Laughlin*, 912 F.2d at 198, and adopted by the Ninth Circuit Court of Appeals in *Hemmen*, 51 F.3d at 891. In *Laughlin*, the IRS served a Chapter 13 Trustee with notice of levy on funds payable to a debtor's counsel as fees from certain Chapter 13 estates. *Laughlin*, 912 F.2d at 198–99. The majority opinion in *Laughlin* found no violation of the automatic stay: "The Debtors, estates, and creditors—those entities the automatic stay is designed to protect—are unaffected by the levy." *Id.* at 198 (citation omitted). In *Hemmen*, the Ninth Circuit adopted the *Laughlin* approach to address an IRS levy served on a Chapter 7 Trustee. The Ninth Circuit held that "[a]ny perceived

6. *Cf.* 11 U.S.C. § 362(k).

effect of a tax levy on the debtor, the estate's assets or the interests of other creditors is purely chimerical." *Hemmen,* 51 F.3d at 891.

This Court finds the majority holdings in *Laughlin* and *Hemmen* unpersuasive and inapplicable to the case at bar. As the dissents in *Laughlin* and *Hemmen* point out, both majority opinions disregard the plain language of 11 U.S.C. § 362(a). In *Laughhn,* the majority opinion intentionally avoided the question of whether undistributed funds in the hands of a Chapter 13 Trustee qualify as property of the estate:

> The bankruptcy and district courts found no violation of the automatic stay based on their view that funds held by a Chapter 13 trustee for distribution to creditors under a confirmed plan are vested in the debtor under 11 U.S.C. § 1327(b) and thus are no longer property of the estate subject to the automatic stay. Because we base our holding on a different ground, we do not consider or decide whether property remains in the bankruptcy estate after confirmation of a Chapter 13 plan.

*Laughlin,* 912 F.2d at 199, n. 4. Unlike the Chapter 13 confirmation order contemplated in *Laughlin,* Chapter 13 confirmation orders in the Western District of Tennessee unambiguously state that postconfirmation undistributed funds in the hands of a Chapter 13 Trustee remain property of the estate.

The majorities of *Laughlin* and *Hemmen* analyzed the validity of the IRS levy under § 301.6331–1(a) of the Treasury Regulations. In *Laughlin,* the judicially-crafted exception to the automatic stay is based on the minimal interference the IRS levy would impose on the bankruptcy process.

> The IRS is seeking only to collect directly from the trustee that which the debtors owe the taxpayer-creditor according to the terms and conditions of confirmed Chapter 13 plans. Thus, our concerns in *Bostwick* about rehabilitation of the debtor and the orderly administration of the bankruptcy laws do not come into play.

*Laughlin,* 912 F.2d at 199 (citing *Bostwick v. United States,* 521 F.2d 741, 744 (8th Cir.1975)). This sentiment is reflected in the Treasury Regulations relating to levying in bankruptcy or receivership cases:

> During a bankruptcy proceeding or a receivership proceeding in either a Federal or a State court, the assets of the taxpayer are in general under the control of the court in which such proceeding is pending. *Taxes cannot be collected by levy* upon assets in the custody of a court, whether or not such custody is incident to a bankruptcy or receivership proceeding, *except where the proceeding has progressed to such a point that the levy would not interfere with the work of the court or where the court grants permission to levy.*

26 C.F.R. § 301.6331–1(a)(3) (emphasis added). Likewise, the majority in *Hemmen* focused their attention almost entirely on whether an undistributed allowed administrative claim was sufficiently "fixed and determinable" to satisfy the Treasury Regulations. 51 F.3d at 890 ("Finding no case law on point, we turn directly to the language of 26 C.F.R. § 301.6331–1(a)(1) to determine whether Hemmen was obligated to honor the Service's levy on the facts before us."). Although Treasury Regulations may be informative, they do not provide the foundation for a judicial exception to the automatic stay nor do they supplant the plain language of the Bankruptcy Code. *Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.,* 467 U.S. 837, 842, 104 S.Ct. 2778, 2781, 81 L.Ed.2d 694 (1984).

Finally, the IRS asserts that a judicially-crafted exception to the automatic stay much like those in *Laughlin* and *Hemmen* already exists in the Sixth Circuit. In its response to the Trustee's motion to quash, the IRS argued that: "The Sixth Circuit has held that the test for determining whether there is a violation of section 362(a)(3) is whether the action 'actually depletes the bankruptcy estate.'" *(IRS Resp.,* ECF No. 94 at 2)(quoting *Nat'l Century Fin. Enters., Inc.,* 423 F.3d at 578). This characterization takes the Sixth Circuit's *National Century* decision out of context. The issue before the court in *National Century* was whether 11 U.S.C. § 362(a) prohibited state court actions against solvent non-debtors when the property at issue is, or likely is, property of the bankruptcy estate. *Id.* at 574. Based on § 362(a)(3)'s prohibition against "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate," the Sixth Circuit concluded that § 362(a)(3) prevents a creditor's state court action against a non-debtor when the creditor "seeks to obtain property of the bankruptcy estate." *Id.* at 575, 578.

Although it is true that the *National Century* court recognized that depletion of the bankruptcy estate may be a necessary factor in a § 362(a)(3) inquiry, it did so when refuting the appellant's argument that a bankruptcy court must extend § 362's automatic stay by issuing a preliminary injunction under 11 U.S.C. § 105 in order to stop actions against property of the estate:

> Amedisys argues that "the automatic stay under section 362(a) applies *only to the bankrupt debtor,*" and therefore that § 362(a) did not support the bankruptcy court's decision in this case. Appellant's Br. at 18. To buttress this assertion, Amedisys cites two decisions of this court for the proposition that a bank-

ruptcy court must find unusual circumstances, justifying a preliminary injunction under 11 U.S.C. § 105(a), in order to extend the scope of a § 362(a)(1) automatic stay to encompass claims against not only a debtor defendant, but also nondebtor codefendants. *See Patton v. Bearden,* 8 F.3d 343, 349 (6th Cir.1993); *Parry v. Mohawk Motors of Mich., Inc.,* 236 F.3d 299, 314–315 (6th Cir.2000).

. . .

Amedisys' argument is not persuasive. The district court appears unnecessarily to have assumed that the bankruptcy court entered a preliminary injunction extending the automatic stay beyond its statutory terms, rather than merely enforcing the automatic stay as provided by statute. The automatic stay of § 362(a) applies by its terms not only to actions against the debtor, *see* § 362(a)(1), but also to actions seeking to obtain property of the bankruptcy estate, *see* § 362(a)(3)....Here, unlike in *Patton* and *Parry,* the bankruptcy court determined that the automatic stay already covered the action. As a sister circuit has held, "[A]n action taken against a nondebtor which would inevitably have an adverse impact upon the property of the estate must be barred by the [§ 362(a)(3)] automatic stay provision." *Licensing by Paolo, Inc. v. Sinatra (In re Gucci),* 126 F.3d 380, 392 (2d Cir.1997). This court's decision in *Patton,* 8 F.3d 343, further supports this conclusion. In *Patton,* this court analyzed separately the applicability of stays under § 362(a)(1) and under § 362(a)(3). As part of the § 362(a)(1) analysis, the court noted that a debtor must demonstrate unusual circumstances in order to extend the automatic stay to nondebtor codefendants. 8 F.3d at 349. Under the § 362(a)(3) inquiry,

the court merely analyzed whether a judgment against the solvent codefendants would actually deplete the bankruptcy estate. *Id.*

*Natl Century Fin. Enters., Inc.,* 423 F.3d 567, 578 (6th Cir.2005) (some internal citations omitted). As one bankruptcy court in the Sixth Circuit has recognized, the *National Century* analysis of whether a judgment "would actually deplete the bankruptcy estate" applies to situations in which a party is seeking a judgment against solvent codefendants. *In re Cincom iOutsource, Inc.,* 398 B.R. 223, 228 (Bankr.S.D.Ohio 2008) (citing *Natl Century Fin. Enters., Inc.,* 423 F.3d at 579) (other citations omitted)). In both *National Century* and *Patton,* the debtors were in pending Chapter 11 cases and the actions at issue were lawsuits filed against solvent codefendants in courts outside the bankruptcy arena. The situation in the case is bar is distinctively different.

 Although either "depleting" or "dismembering" property of the estate are sufficient to violate the automatic stay under 11 U.S.C. § 362(a)(3), it does not follow that actions so severe are necessary to violate the automatic stay. Rather, the statute's terms "obtain possession" and "exercise control" indicate that a wide spectrum of acts are stayed. *See Allentown Ambassadors, Inc. v. Northeast American Baseball, LLC (In re Allentown Ambassadors, Inc.),* 361 B.R. 422, 437 (Bankr.E.D.Pa.2007) ("The term [exercise control] has been described as 'elusive' and one which can be defined only in a 'case by case' manner because a 'continuum of conduct exists which the Court must evaluate in determining whether [a party] has assumed control of property of the estate.'") (citations omitted). Moreover, if an act to possess or control property of the estate only violated § 362(a)(3) when it diminished the value of the bank-

ruptcy estate, there would be nothing to stop a secured creditor from exercising its self-help remedies to foreclose on collateral in which the debtor has no equity. Creditors would rely on their own opinion of the debtor's bankruptcy to determine whether foreclosure would cause damage to the bankruptcy estate. Simply put, the IRS' interpretation of *National Century* completely disregards the essential and fundamental procedural role that the automatic stay plays in the bankruptcy process:

[W]hile the automatic stay may adversely impact the substantive rights of creditors, the purpose of the automatic stay is not substantive, but procedural. The automatic stay is intended as a form of procedural protection under which the debtor in a chapter 13 case can prepare, present, and execute a proposed plan free from unauthorized creditor pressure. The purpose of the automatic stay is not to ultimately determine the substantive rights of any party, nor to ultimately prevent the exercise of the available rights of any party. A great number of the actions prohibited by the automatic stay (seizures, foreclosures, statutory notices, and demands) may be permitted when relief from the stay has been obtained or the automatic stay no longer applies. It is, however, the purpose of the automatic stay, during its pendency, to prevent any creditor from becoming a self-determined arbiter of what constitutes property of the estate and what actions are permitted or prohibited by the stay.

*Clark,* 207 B.R. at 564–65. The determination of "what constitutes property of the estate and what actions are permitted or prohibited by the stay" falls under the exclusive jurisdiction of the bankruptcy court. *Id.* The Sixth Circuit has never adopted the kind of judicial exception to 11 U.S.C. § 362(a) that would so thoroughly

undermine the automatic stay. Accordingly, the IRS must first seek and obtain relief from the automatic stay before proceeding against property of the estate. *See* 11 U.S.C. § 362(a)(1) and Fed. R. Bankr. P. 4001(a).

## CONCLUSION

Considering a totality of the particular facts and circumstances and applicable law, the Court finds and concludes that the IRS violated the automatic stay under 11 U.S.C. § 362(a) by issuing its Notice of Levy against the Trustee. Pursuant to 11 U.S.C. §§ 541(a)(1) and 1306 and the terms of Chapter 13 confirmation orders in the Western District of Tennessee, undisbursed funds in the hands of the Chapter 13 Trustee remain property of the estate until the debtor is discharged, the case is closed or dismissed, or the Court orders otherwise, e.g. grants relief from the automatic stay. Thus, any act to obtain possession of undistributed funds or to exercise control over or interfere with undistributed funds violates 11 U.S.C. § 362(a)(3). Section 362(b) of the Bankruptcy Code does not provide an exception for IRS levies, nor is there an extra-statutory exception accepted in the Sixth Circuit. Accordingly, the IRS must first seek and obtain leave from the automatic stay before seeking to enforce notices of levy against creditors in any pending bankruptcy cases in the Eastern Division of the Western District of Tennessee.

The Court will enter a separate order in accordance with the foregoing.

**The following is SO ORDERED.**